# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADAM GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 18 C 2624 |
| v. ) | |
| ) | Judge John Z. Lee |
| CITY OF CHICAGO, Elizabeth K. Barton, ) | |
| Special Representative of the Estates of ) | |
| NICHOLAS C. CRESCENZO, JR., GEORGE ) | |
| JENKINS, MICHAEL A. POCHORDO, ) | |
| CRAIG CEGIELSKI, ERNEST W. ROKOSIK, ) | |
| and JOSEPH GRUSZKA, deceased, DANIEL ) | |
| McINERNEY, PERCY DAVIS, ROBERT ) | |
| FITZPATRICK, L. MARTINEZ, JAMES R. ) | |
| BROWN, COOK COUNTY, and AS-YET ) | |
| UNKNOWN CHICAGO POLICE ) | |
| DETECTIVES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adam Gray has sued the City of Chicago ("the City"); Elizabeth K. Barton, Special Representative of the Estates of Nicholas C. Crescenzo, Jr., George Jenkins, Michael A. Pochordo, Craig Cegielski, Ernest W. Rokosik, and Joseph Gruszka; Daniel McInerny; Percy Davis; Robert Fitzpatrick; L. Martinez;[1] James R. Brown; Cook County, Illinois; and as-yet unknown Chicago police detectives, all pursuant to 42 U.S.C. § 1983. In short, Gray alleges that Defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments; failed to intervene to prevent the violation of his constitutional rights; and conspired to deprive him of his constitutional rights. Furthermore, he alleges that the violation of his rights was the result of the City's policies and practices. Finally, he asserts state-law claims for intentional infliction of

---

[1] Gray voluntarily dismissed his claims against Martinez on February 13, 2019. *See* Stipulation of Dismissal, ECF No. 99.

emotional distress, malicious prosecution, civil conspiracy, and indemnification, and seeks to hold the City liable under the doctrine of *respondeat superior*.

McInerny, Davis, Fitzpatrick, and Barton ("the Individual City Defendants") have moved to dismiss Gray's second amended complaint in its entirety.[2] For the reasons stated herein, the motion [is denied.

### Background[3]

This case arises from Gray's 1996 criminal conviction for arson and murder. 2d. Am. Compl. ¶¶ 1–2, ECF No. 82. Gray served over 24 years in prison before the conviction was vacated in 2017. *Id.* ¶¶ 1, 8.

### I. The Fire and Subsequent Investigation

A fire broke out in a two-flat building at 4139 S. Albany Avenue in Chicago, Illinois, at approximately 3:00 a.m. on March 25, 1993. *Id.* ¶ 26. Although the first-floor occupants escaped, two second-floor residents perished in the fire. *Id.*

Gray, then 14 years old, lived with his family one block south of 4139 S. Albany. *Id.* ¶ 28. On the evening of March 24, 1993, he was sleeping over at the home of his friend, Mel Gonzalez, and Gonzalez and his family were home throughout the night. *Id.* ¶ 27.

Shortly after the fire was extinguished, Gruszka, a Chicago Fire Department fire marshal, began investigating the cause and point of origin. *Id.* ¶ 29. He conferred with Rokosik, a detective

---

[2] The Individual City Defendants originally moved to dismiss Gray's first amended complaint. After the motion was filed, Gray filed his second amended complaint, and the Court struck the motion to dismiss as moot. *See* Order of 10/1/18, ECF No. 81. The Individual City Defendants later filed a motion to renew the motion to dismiss and complete briefing, which the Court granted. *See* Order of 10/29/18, ECF No. 90.

[3] The following facts are taken from Gray's second amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

2

with the Chicago Police Department ("CPD") Bomb and Arson Unit. *Id.* ¶¶ 19, 30. Rokosik also spoke to other detectives on the scene, including Jenkins, McInerny, and Crescenzo. *Id.* ¶ 31.

In investigating the scene, Gruszka used a hydrocarbon detector and claimed to receive a "strong response" on the porch, indicating the presence of liquid accelerant. *Id.* ¶ 32. Gruszka knew, however, that an alert from a hydrocarbon detector does not conclusively establish that liquid accelerant was used, but must be confirmed by laboratory testing. *Id.* ¶¶ 33–34.

Rokosik and Gruszka also told other law enforcement officers, fire department personnel, and prosecutors that an accelerant had caused the fire, "based on the presence of heavy charring, shiny blistering, and 'alligatoring' on the wooden porch and stairs." *Id.* ¶ 35. They knew, however, that there is "no correlation between heavy charring, shiny blistering, or alligatoring of wood and the use of an accelerant." *Id.* ¶¶ 36–37. Furthermore, they knew that, according to fire-investigation standards, fire investigators should not claim the presence of accelerant based solely on the appearance of charring. *Id.* ¶ 38.

Rokosik took two samples for testing; both were negative for gasoline, and one was negative for hydrocarbon residue. *Id.* ¶¶ 39–41. The other contained petroleum distillates "often associated with wooden structures due to their use as preservatives for wood." *Id.* ¶ 42. According to Plaintiff, there was simply no evidence to support the conclusion that an accelerant was used to start the fire. *Id.* ¶¶ 43–44. Although Rokosik and Gruszka knew that determining the cause of a fire requires identifying the ignition source, first fuel ignited, and ignition sequence, they did not identify or collect evidence of any of these elements. *Id.* ¶ 45. Additionally, although they knew that a fire investigator must eliminate "all reasonably possible natural and accidental causes" before declaring a fire to be arson, they declared the fire at 4139 S. Albany an arson before eliminating such possible causes. *Id.* ¶¶ 46–49.

After examining the scene, Rokosik and CPD detective Crescenzo spoke to Kasey Paris, a 14-year-old girl whose family lived in the first-floor apartment at 4139 S. Albany. *Id.* ¶ 50. Paris, who was angry at Gray, told the detectives that she and Gray had not been getting along. *Id.* ¶ 51.

Rokosik and Crescenzo also spoke to a witness, Karrie Kelly, who told the officers that she had seen someone carrying something and wearing a black knit hat, black shirt, black pants, and black shoes in the alley behind 4139 S. Albany. *Id.* ¶ 52. Although Rokosik and Crescenzo "had every reason to know" that Kelly—who was "on muscle relaxants, exhausted, and feeling ill"— was not credible, Rokosik and CPD detective McInerny "went looking" for Gray. *Id.* ¶¶ 53–55.

## II.    Arrest and Interrogation

When Rokosik and McInerny arrived at Gray's house, his mother told them that Gray had slept over at Gonzalez's house, but was then at his brother's house. *Id.* ¶ 56. Although Rokosik and McInerny did not tell Gray's mother that they intended to arrest him, they proceeded to Gray's brother's home and arrested Gray. *Id.* ¶¶ 57–58. They did not tell Gray that he was under arrest, and they did not read him *Miranda* warnings. *Id.* ¶¶ 59–61.

Gray was taken to the Area One police station at 51st Street and Wentworth Avenue, where he arrived at approximately 5:00 or 5:15 a.m. on March 25, 1993. *Id.* ¶¶ 62–63. Rokosik and McInerny left Gray alone in a room at the station. *Id.* ¶ 64. After some time, Crescenzo entered the room and searched Gray's school bag. *Id.* ¶ 65. At various points, other Police Officer Defendants[4] entered the room and searched Gray's bag, smelled his shoes, and told him to empty his pockets. *Id.* ¶ 66.

Cook County Assistant State's Attorney Brown was also at the police station, "actively working on [the] investigation" with the Police Officer Defendants. *Id.* ¶ 67. Eventually, Brown

---

[4] The second amended complaint refers to Crescenzo, Rokosik, Pochordo, Jenkins, McInerny, Davis, Cegielski, Fitzpatrick, and unknown detectives as "the Police Officer Defendants." 2d Am. Compl. ¶ 21.

4

took Gray into another room with a two-way mirror. *Id.* ¶ 68. He "sat very close" to Gray and told him he was there to ask him questions. *Id.* The Police Officer Defendants were also present for this interview, and they joined Brown in questioning Gray. *Id.* ¶¶ 69–70.

Brown and the Police Officer Defendants initially asked benign questions, and Gray did not realize he was a suspect. *Id.* ¶¶ 70–71. At some point, however, Brown and the Police Officer Defendants began "harshly interrogat[ing]" Gray, "isolating him, denying him the right to counsel, denying him access to family members who had asked to talk to him, and fe[eding] him information about the fire." They did all this even though they had no reason to believe that Gray was involved in the fire. *Id.* ¶ 72.

Although Gray repeatedly denied his involvement and told Brown and the Police Officer Defendants that he did not leave Gonzalez's house that night, they "became more and more aggressive and hostile." *Id.* ¶¶ 73–75. CPD Youth Officer Davis also participated in the interrogation and failed to intervene to prevent Gray from giving a false confession or to protect Gray's interests and rights. *Id.* ¶ 77. The interrogation continued for "hours" without Gray's parent, guardian, attorney, or other adult present. *Id.* ¶ 76. Although Gray was crying, confused, scared, tired, cold, and nauseated, Brown would not allow him to sleep during a break in the interrogation. *Id.* ¶¶ 79–81.

During the course of the interrogation, Brown and the Police Officer Defendants repeatedly lied to Gray; Crescenzo told him that a "little old lady" had seen him set the fire, and another Police Officer Defendant told him that Gonzalez had stated that he "did not know if [Gray] had left [Gonzalez's] house the previous evening." *Id.* ¶ 82. In addition, Brown and the Police Officer Defendants told Gray that his brother had come to the police station but had left, and that his mother "did not care what happened to him and would not come to the police station." *Id.* ¶¶ 83–

5

85. In fact, Gray's mother and brother were at the police station but were made to wait for hours, allegedly "so that [Brown and the Police Officer Defendants] could unlawfully obtain a false confession" from Gray. *Id.* ¶¶ 87–89. Brown and the Police Officer Defendants agreed to secure a confession, "regardless of whether it was true or false, and knowing that there was no evidence" that Gray had set the fire. *Id.* ¶ 90.

At one point, Crescenzo told Gray that a copy machine "could determine if he had lead from gasoline on his hands." *Id.* ¶ 91. Crescenzo "copied" Gray's hands, then told him that the machine showed lead on his hands. *Id.* ¶¶ 91–92. Crescenzo then left Gray alone for some time before returning and saying something to the effect of, "I believe you that you didn't do it, but the only way you'll get out of here is if you say you did it." *Id.* ¶¶ 93–94. Crescenzo told Gray that if he confessed, Crescenzo would drop him off at school, while if he did not confess, "he would be given the electric chair." *Id.* ¶ 94.

All the while, Brown and the Police Officer Defendants fed Gray details about the fire and rehearsed the fabricated statement repeatedly. *Id.* ¶¶ 96–97. Eventually, Gray "falsely implicated himself in the fire," believing that it was the only way to get out of the police station, and "gave a false confession." *Id.* ¶¶ 95, 98. In his statement, Gray "parroted" the false narrative "concocted" by Brown and the Police Officer Defendants, stating that he had left Gonzalez's house in the middle of the night, bought gasoline in a milk jug at a nearby gas station, went to Paris's house, and then set the porch and stairs on fire. *Id.* ¶ 99.

III. **Fabrication of Evidence**

Gray also alleges that Defendants fabricated several pieces of evidence of Gray's guilt. For instance, at some point between interrogation sessions, Crescenzo and CPD detective Pochordo placed Gray in a lineup with Gonzalez and two other boys, none of whom Gray resembled. *Id.*

6

¶¶ 105–06. Kelly viewed the lineup, and the officers "made it clear" whom she should pick, or knew she would pick Gray because she was familiar with him. *Id.* ¶¶ 107–09. Kelly picked Gray out of the lineup. *Id.* ¶ 110.

Furthermore, Brown, Crescenzo, and another Police Officer Defendant questioned Gonzalez on March 25, 1993. *Id.* ¶ 111. They threatened him and fabricated reports that he said he "did not know if [Gray] may have left his house in the middle of the night." *Id.* ¶¶ 111–12.

In addition, at some point on March 25, 1993, Crescenzo, Pochordo, CPD detective Cegielski, CPD detective Jenkins, and CPD officer Martinez fabricated evidence by obtaining a milk jug that they claimed Gray had used to buy gasoline and carry it to 4139 S. Albany, when the jug did not in fact contain gasoline or gasoline residue. *Id.* ¶¶ 113–14. Furthermore, Crescenzo, accompanied by either Pochordo or Cegielski, went to a gas station at 40th Street and Kedzie Avenue on March 26, 1993, and showed attendant Brenda Thomas a photo array that included Gray's photo. *Id.* ¶¶ 115–16. Thomas told them that she did not recognize any of the photos, but Crescenzo and Pochordo or Cegielski told her to "keep looking." *Id.* ¶¶ 116–17. Crescenzo and Pochordo or Cegielski pressured Thomas to pick Gray's photo from the array. *Id.* ¶¶ 118–19.

Finally, while readying the case for trial, "one or more of the Police Officer Defendants" worked with Paris to prepare false testimony stating that Gray had threatened her. *Id.* ¶ 121.

### IV. Trial, Conviction, and Exoneration

Gray was tried in April 1996. *Id.* ¶ 124. Gray's confession was the State's primary evidence, and the sole piece of physical evidence was the milk jug fabricated by Crescenzo, Pochordo, Cegielski, Jenkins, and Martinez. *Id.* ¶ 125. Gray was wrongfully convicted of arson and murder and was sentenced to life imprisonment without parole at the age of 17. *Id.* ¶ 127.

After Gray was convicted, he continued to pursue "all possible legal avenues" to exoneration. *Id.* ¶ 128. Eventually, the Cook County State's Attorney's Office ("SAO") investigated and determined that Gray "had been wrongfully convicted." *Id.* ¶ 129. As a result, the SAO filed a motion asking the Illinois Appellate Court to overturn the convictions, dismiss the indictment, and release Gray. *Id.* The motion was granted on May 3, 2017. *Id.* Gray then filed a petition in the Circuit Court of Cook County for a Certificate of Innocence. *Id.* ¶ 130. The petition, which the SAO did not oppose, was granted on February 21, 2018. *Id.*

## **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## **Analysis**

The Individual City Defendants contend that Gray's second amended complaint contains "group pleading" that is deficient under Federal Rule of Civil Procedure 8(a). Additionally, they contend that Gray has not sufficiently alleged the personal involvement of certain Defendants.

8

I.  **Group Pleading**

The Individual City Defendants argue that Gray's second amended complaint violates Rule 8(a) by "inappropriately group[ing] [them] together without differentiation or explanation as to what each person did or did not do." Individual City Defs.' Mot. Dismiss at 4, ECF No. 59. Gray responds that the complaint identifies specific individuals where possible, and that the use of "Police Officer Defendants" to refer to a subset of Defendants is sufficient at the pleading stage.

Rule 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. It is true, as the Individual City Defendants point out, that liability under § 1983 requires that a defendant be personally responsible for a constitutional violation. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). But Rule 8(a) is "not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013).

Rather, in some circumstances, "an allegation directed at multiple defendants can be adequate to plead personal involvement." *Rivera v. Lake Cty.*, 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013) (citing *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009)); *see also Johnson v. Vill. of Maywood*, No. 12 C 3014, 2012 WL 5862756, at *2 (N.D. Ill. Nov. 19, 2012) (recognizing that, instead of drafting one paragraph stating that "Defendant Officers" witnessed an attack on him and failed to intervene, "Plaintiff could have made identical factual allegations in five separate paragraphs, alleging one-by-one that each Defendant witnessed or participated in the attack and failed to come to his aid . . . but he was not required to."). And while a plaintiff whose complaint relies on group pleading "must eventually tie particular officers to particular injuries to survive

summary judgment," *Hyung Seok Koh*, 2013 WL 5348326, at *5, at the pleading stage, "a plaintiff may generally name those responsible for the alleged violations," including by grouping Defendants into subgroups of individuals who are alleged to have acted jointly. *Vandenburgh v. Bannockburn Police Officer Robert Ogden*, No. 15 C 6191, 2016 WL 403663, at *5 (N.D. Ill. Feb. 3, 2016). "The key to satisfying Rule 8 is that [a plaintiff] 'put the defendants on notice of what exactly they might have done to violate [his] rights.'" *Kuri v. City of Chi.*, No. 13 C 1653, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) (quoting *Brooks*, 578 F.3d at 582).

Indeed, allegations of the sort presented here have survived motions to dismiss in numerous cases. *See, e.g.*, *Vandenburgh*, 2016 WL 403663, at *5; *Sanders v. City of Chi. Heights*, No. 13 C 0221, 2014 WL 5801181, at *3 (N.D. Ill. Nov. 7, 2014); *Kuri*, 2014 WL 114283, at *7; *Rivera*, 974 F. Supp. 2d at 1194; *Hyung Seok Koh*, 2013 WL 5348326, at *4. Some courts have reached the opposite conclusion. *See, e.g.*, *Lattimore v. Vill. of Streamwood*, No. 17 C 8683, 2018 WL 2183991, at *4 (N.D. Ill. May 11, 2018) (plaintiffs identified specific acts by one defendant, but "fail[ed] to identify what the other [defendants] did or did not do"); *Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *3 (N.D. Ill. June 22, 2015) (plaintiff alleged that specific acts could have been committed by the defendants *or* by other unidentified individuals); *Liera v. City of Chi.*, No. 13 C 9032, 2014 WL 3921359, at *3 (N.D. Ill. Aug. 5, 2014) (plaintiff alleged specific acts by three defendants, but failed to state which of the additional 35 defendants participated in the alleged conduct); *Smith v. Vill. of Dolton*, No. 09-cv-6351, 2010 WL 744313, at *2 (N.D. Ill. Feb. 25, 2010) (plaintiff alleged conduct by "Defendant Officers" but failed to define the term); *Carter v. Dolan*, No. 08 C 7464, 2009 WL 1809917, at *3–4 (N.D. Ill. June 25, 2009) (plaintiff alleged no specific acts by any named defendant). But those cases are readily distinguishable.

Here, Gray's allegations clearly lay out what each of the Individual City Defendants is alleged to have done. To summarize, Gray alleges that Gruszka fabricated evidence of arson and acted contrary to fire-investigation standards in investigating the fire at 4139 S. Albany. 2d Am. Compl. ¶¶ 29–49. Gray alleges that Rokosik was present at the scene, conferred with other Defendants including McInerny, Jenkins, and Crescenzo, and fabricated evidence of arson. *Id.* ¶¶ 30–31, 35–39, 45–49. Crescenzo and Rokosik allegedly interviewed Paris and Kelly and should have known that Kelly was not credible. *Id.* ¶¶ 50–54. And Gray further states that Rokosik and McInerny arrested him without giving *Miranda* warnings. *Id.* ¶¶ 55–62.

Additionally, the "Police Officer Defendants," a group which includes Crescenzo, Rokosik, Pochordo, Jenkins, McInerny, Davis, Cegielski, and Fitzpatrick, allegedly jointly interrogated Gray and coerced his confession. *Id.* ¶¶ 69–76, 78–90, 95–100, 104. Gray specifically alleges that Crescenzo falsely told him that a witness had seen him set the fire, that a copy machine could detect the presence of lead on his hands, and that confessing was the only way to leave the police station. *Id.* ¶¶ 82, 91–92, 94. Furthermore, Gray asserts that Davis failed to intervene to prevent a false confession, and that he would not allow Gray to call his mother. *Id.* ¶¶ 77, 103.

What is more, Gray alleges, Crescenzo and Pochordo organized an unduly suggestive lineup. *Id.* ¶¶ 105–10. Crescenzo also allegedly threatened Gonzalez into giving a false statement about Gray's possible whereabouts the night of the fire. *Id.* ¶¶ 111–12. Moreover, Crescenzo, Pochordo, Jenkins, and Cegielski allegedly fabricated evidence of a milk jug they claimed was used to transport gasoline to the scene of the fire. *Id.* ¶ 113. Finally, Crescenzo, along with either Pochordo or Cegielski, allegedly questioned Thomas at the gas station and pressured her into choosing Gray's photo from the array. *Id.* ¶¶ 115–19.

11

These allegations are sufficient to provide the Individual City Defendants with notice of the claims against them, which is all that is required at this stage of the proceedings and under Rule 8(a). Although the factual allegations concerning Gray's interrogation and confession are directed at numerous Individual City Defendants as a group, "[a] plaintiff may not be able to specify which individual committed which parts of the alleged misconduct before the benefit of discovery." *Kuri*, 2014 WL 114283, at *7 (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009)). The complaint concerns events that occurred over two decades ago, when Gray was only 14 years old, and he alleges that Defendants confused and manipulated him during his interrogation. Under the circumstances, "[i]t is not surprising that Plaintiff cannot, at this stage, attribute every wrongful act to a specific Defendant." *Rivera*, 974 F. Supp. 2d at 1194. To be sure, Gray will ultimately have to demonstrate that each Individual City Defendant was personally involved in the constitutional violations alleged. *See Hyung Seok Koh*, 2013 WL 5348326, at *5. At this stage, however, although "group pleading is not an ideal practice," it is a permissible one. *Id*. Thus, the Court declines to dismiss Gray's second amended complaint for "group pleading."

## II. Personal Involvement of Fitzpatrick, McInerny, Cegielski, and Jenkins

The Individual City Defendants also argue that the second amended complaint "fails to include adequate facts to allege personal involvement" for Fitzpatrick, McInerny, Cegielski, and Jenkins. Individual City Defs.' Mot. Dismiss at 8. As discussed above, personal involvement in the alleged constitutional violation is a requirement for liability under § 1983. *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003).

### A. Robert Fitzpatrick and Daniel McInerny

The Individual City Defendants argue that Fitzpatrick should be dismissed as a Defendant because the only references to him by name are one paragraph stating that he is a detective, and

another stating that he is included in the group of Police Officer Defendants. 2d Am. Compl. ¶¶ 19–20. The Individual City Defendants rely on their group-pleading argument to discount any allegations concerning the Police Officer Defendants and contend that the rest of the complaint is "entirely devoid of any specific action [in] which Defendant Fitzpatrick is alleged to have engaged[.]" Individual City Defs.' Mot. Dismiss at 8. But, as described above, Fitzpatrick is alleged to have been part of a group of officers who were present for—and participated in—Gray's constitutionally defective interrogation. This is enough for now.

The Individual City Defendants raise the same argument with respect to McInerny, contending that the only specific factual allegations against him concern Gray's arrest and transport to the police station, which are not relevant to any claim. But, here too, Gray has sufficiently alleged that McInerny was personally involved in committing constitutional violations as part of a group of officers who interrogated him.

### B. Craig Cegielski and George Jenkins

The Individual City Defendants' arguments as to Cegielski and Jenkins center on Gray's allegation that they (along with Crescenzo, Pochordo, and now-dismissed Defendant Martinez) obtained an empty milk jug and claimed Gray had used it to carry gasoline to the scene of the fire:

> [A]t some point on March 25, 1993, Defendants Crescenzo, Pochordo, Cegielski, Jenkins, and L. Martinez fabricated physical evidence used to arrest, detain, prosecute, and convict [Gray]. To support [Gray's] false confession, Defendants Crescenzo, Pochordo, Cegielski, Jenkins, and Martinez obtained an empty milk jug, which they claimed was used by [Gray] to buy gasoline and carry it from the gas station to 4139 S. Albany. In truth, the milk jug did not contain gasoline or gasoline residue, could not have been used to set the fire, and its purported role in the fire was entirely concocted by Defendants.

2d Am. Compl. ¶ 113.

According to the Individual City Defendants, this allegation is insufficient because Gray was required to "provid[e] some detail as to how [the Defendants] would know what to fabricate,

13

how to fabricate it, and the purpose for which it would have been fabricated." Individual City Defs.' Mot. Dismiss at 10. They cite two cases in support of this argument: *Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014), and *Munoz v. Rivera*, 169 F. Supp. 3d 815 (N.D. Ill. 2015). But neither case is persuasive. In *Petty*, the Court of Appeals merely recognized that a plaintiff could not use phrases like "manufactured false evidence" as "magic talismans" to "transform a coercion case into an evidence fabrication case" giving rise to a cognizable due-process claim. 754 F.3d at 423. And in *Munoz*, the district court rejected the plaintiff's allegations of evidence fabrication because he "allege[d] neither manufactured physical evidence nor the 'concoction' of a false story fed to a witness by law enforcement," but vaguely claimed that the defendants "falsely reported" what they had perceived or been told. 169 F. Supp. 3d at 818. By contrast, here, the second amended complaint identifies a specific piece of allegedly fabricated evidence (an empty milk jug), states who fabricated it (Cegielski, Jenkins, Crescenzo, Pochordo, and non-Defendant Martinez), and explains why it was fabricated (to support Defendants' claim that Gray used gasoline to start the fire).

Aside from the evidence-fabrication allegations, the Individual City Defendants also take issue with Gray's assertion that either Cegielski *or* Pochordo accompanied Crescenzo to the gas station where Thomas worked and pressured her into choosing Gray's photo from a photo array. 2d Am. Compl. ¶¶ 115–19. Echoing their group-pleading argument, the Individual City Defendants contend that this "either/or" allegation "cannot raise [Gray's] prospect of relief against Officer Cegielski to the required level of plausibility." Individual City Defs.' Mot. Dismiss at 11. On the contrary, the second amended complaint clearly alleges that Crescenzo, along with either Cegielski or Pochordo, committed the misconduct alleged. Because this alleged interaction occurred outside of Gray's presence, it is understandable that he cannot "attribute [the] wrongful

act to a specific Defendant." *Rivera*, 974 F. Supp. 2d at 1194.  Again, at this stage, the allegation that either Cegielski or Pochordo was the officer who accompanied Crescenzo to the gas station sufficiently pleads personal involvement and gives Cegielski notice of the claim against him.

## **Conclusion**

For the foregoing reasons, the Individual City Defendants' motion to dismiss is denied.


**IT IS SO ORDERED.**                    ENTERED  8/1/19

_____
**John Z. Lee**
**United States District Judge**