**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

ADAM GRAY,                                              )
                                                       )       Case No. 18 CV 2624
                              Plaintiff,               )
                                                       )       Judge Gary S. Feinerman
        v.                                             )
                                                       )
CITY OF CHICAGO, et al.,                               )
                                                       )
                                                       )
                              Defendants.              )

**PLAINTIFF'S RESPONSE TO INDIVIDUAL CITY**
**DEFENDANTS' COMBINED MOTIONS *IN LIMINE*[1]**

        Now comes Plaintiff, Adam Gray, by and through his counsel, Loevy & Loevy, and

hereby respectfully submits this Response to the Individual City Defendants' Combined Motions

*in Limine* [Dkt. 374]. Plaintiff states as follows:

  1.    **Motion to bar evidence or argument relating to the position taken by the CCSAO on**
        **Plaintiff's vacated convictions and the Certificate of Innocence ("COI")**

        The fact that Plaintiff was granted a COI is relevant and admissible, for the reasons

discussed in Plaintiff's response to Defendants' motion to bar. Dkt. 393 (Pl.'s Resp. to Mot. to

Bar COI). Defendants' motion is moot because Plaintiff does not intend to present any evidence

about the CCSAO's reasons for agreeing to the COI. In any event, the CCSAO is asserting

deliberative process privilege over its decisionmaking on the post-conviction petition and the

COI. *See* Dkt. 174 (CCSAO's Reply in support of Motion to Quash). CCSAO witnesses will not

be testifying at trial to the underlying reasons for their actions.

        As Plaintiff explains in his response to Defendants' motion to bar reference to the COI,

the fact that the COI was granted is the only fact relevant to the trial, not what was said in the

---

[1] As an initial matter, Plaintiff notes that Defendants did not seek to confer about all of their motions *in limine*.

1

context of granting it. It is worth noting that Defendants are confusing two different things: the fact that the CCSAO agreed to Plaintiff's COI is a matter of public record and subject to judicial notice; that fact is different from the reasons *why* the CCSAO agreed to Plaintiff's COI or the reasons/basis for its decisions. Nevertheless, as discussed, Plaintiff only intends to present the fact that his COI was granted, not evidence about how that came about.

**2.      Motion to bar any opinion testimony regarding beliefs of Plaintiff's actual innocence or credibility in describing his innocence**

Plaintiff has no objection to this motion, but witnesses should also be barred from offering their opinions or beliefs about Plaintiff's guilt or Plaintiff's credibility. In other words, this motion must apply both ways. Defendants' witnesses cannot be permitted to opine or testify that they think Plaintiff is guilty or Plaintiff is not credible. This kind of testimony should not be allowed from any witness.

**3.      Motion to bar argument regarding dismissed claims including that Defendant Officers could not rely upon evidence of wood alligatoring/charring for probable cause**

Plaintiff argued at summary judgment that a reasonable jury could hold Rokosik and Gruszka liable for fabrication of evidence because they knew at the time of the investigation (1993) and trial (1996) that alligatored, charred, and blistered wood are not indications of liquid accelerant use, especially when flashover has occurred, and yet they wrote reports stating otherwise. The court dismissed this claim because it determined there was insufficient evidence that Rokosik and Gruszka *knowingly* fabricated evidence, and it noted that Plaintiff's expert acknowledged that "NFPA 921's guidance on alligatoring and blistering of wood was not widely accepted in the fire investigation community at the time of Gray's arrest or conviction." *See* Dkt. 293 (SJ Opinion) at 26. Based on this, Defendants argue, "Plaintiff and his counsel should be barred from arguing that Individual City Defendants could not rely on evidence that wood

2

charring/alligatoring indicated the use or presence of an accelerant," and "it is undisputed that Individual City Defendants reasonably concluded that the heavy charring/alligatoring at the fire scene was indicative of the use of an accelerant and that the situation indicated that an arson had been committed." Dkt. 374 (Ind. City Defs.' Combined MILs) at 4-5.

Defendants are confusing different, and completely unrelated things. To be clear, Plaintiff does not intend to try to prove a claim (fabrication of arson evidence) against Defendants Gruszka and Rokosik that has been dismissed. However, the fact that there is evidence that NFPA 921's guidance on alligatoring and blistering of wood was not widely accepted at the time of the investigation or conviction is simply that—evidence. Defendants are free to elicit that testimony from the witnesses and present evidence of that. Likewise, Plaintiff should be allowed to present evidence (including from his expert Dennis Smith) that fire investigation standards at the time indicated that alligatoring/blistering were not indicative of arson.[2] In other words, facts about what the fire investigation standards at the time were and how "common" or "widely accepted" they were at the time are disputed, and there is no basis to bar Plaintiff from presenting evidence about disputed facts. The fact that the court found insufficient evidence for a jury to conclude that Rokosik or Gruszka *knowingly* fabricated arson evidence is a wholly different question.

In sum, there is no basis to bar Plaintiff from making arguments or presenting evidence about the fact that alligatoring and blistering of wood is not evidence of arson (or liquid accelerant use). Plaintiff's fire investigation and arson experts (including both John Lentini and Denny Smith) will testify to that. Even Defendants' expert, Edward Nordskog, agrees with that. This evidence is relevant to whether or not an arson was committed at all, which will be one of

---

[2] NFPA 921 was not the only fire investigation standard available at the time. Smith discusses other standards in his report.

the central factual disputes at trial.

Denny Smith has identified standards in place at the time and current standards showing that the conclusion that the fire was caused by use of a liquid accelerant ignited by an open flame is unsupportable, and the cause of the fire (then and now) should be "undetermined." Dkt. 320-1 (Smith Report). Smith is also expected to testify that, although it was a common misconception at the time, there were documents and training available at the time (in addition to NFPA 921) stating that alligatoring is not proof of a liquid accelerant. *See, e.g.,* Dkt. 320-3 (Smith Dep.) at 194:8-18, 201:4-203:17; Dkt. 320-1 at 9-10, 15-16. Defendants dispute how widely available the information was at the time, and whether Gruszka and Rokosik specifically knew this information, but this is fodder for cross-examination, not barring the evidence altogether *in limine*. The court has "the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.*

In sum, Defendants undoubtedly will present evidence that Gruszka and Rokosik concluded during their investigation that the fire was caused by use of a liquid accelerant ignited by an open flame. And they intend to present evidence through their expert, Nordskog, that this conclusion was correct, even by today's fire investigation standards. Plaintiff, however, will present evidence that the conclusions of Gruszka and Rokosik were incorrect and unsupportable—both at the time of the investigation and today. Because Defendants are claiming that Plaintiff is guilty of setting the fire, it is undoubtedly relevant whether the fire investigators' conclusions are supportable.

Defendants' motion *in limine* No. 3 should be denied.

4.    **Motion to bar evidence regarding any alleged deviation from CPD internal policies**

Defendants contend that because Plaintiff's *Monell* claim was bifurcated, any references

to the rules and practices of the CPD are automatically irrelevant. That is plainly incorrect. Even

though it is true that violations of rules and regulations do not by themselves establish

constitutional liability, *e.g.*, *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006), that

by no means compels a conclusion that deviations and departures from the Department's rules

and policies during this investigation have no relevance to any issue at trial. As the Seventh

Circuit has explained:

> Despite its strong language, *Thompson* should not be understood as establishing a rule
> that evidence of police policy or procedure will never be relevant to the objective-
> reasonableness inquiry. We recently clarified that expert testimony concerning police
> policy is not categorically barred. *See Florek v. Village of Mundelein*, 649 F.3d 594, 602-
> 03 (7th Cir. 2011). Even though jurors can understand the concept of reasonableness, in
> some cases they may not fully grasp particular techniques or equipment used by police
> officers in the field. In those instances an expert's specialized knowledge can "help the
> trier of fact to understand the evidence or to determine a fact in issue," as Rule 702
> requires. Fed. R. Evid. 702(a).

*United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017); *see also Cazares v. Frugoli*, 2017

WL 4150719, at *6 (N.D. Ill. Sept. 19, 2017). Defendants' citation to *Thompson* does not

control, because *Thompson* must be reconciled with *Mays v. Springborn*, 575 F.3d 643 (7th Cir.

2009); does not address the relevance of rules, regulations, and training to issues such as intent

and punitive damages; and considers only whether the exclusion of such evidence for an

objective Fourth Amendment reasonableness claim constituted an abuse of discretion. *See, e.g.*,

*England v. Allen*, 2019 WL 2743481, at *5 (N.D. Ill. July 1, 2019) (violation of agency rules and

procedures may be relevant to claim for punitive damages or other circumstances not foreclosed

by *Thompson*) (citing *Via v. Lagrand*, 2007 WL 495287, at *6 (N.D. Ill. Feb. 12, 2007)

("*Thompson* did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages.")). Deviations from expected behavior should not be held per se irrelevant at trial.

Additionally, *Thompson* was decided prior to the Seventh Circuit's decision in *Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013), which it made clear that in constitutional tort cases, expert testimony regarding defendants' departure from accepted police practices is relevant to proving intent:

> In constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful. Liability for constitutional torts is more limited in scope than common law tort liability. Negligence is not sufficient. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Expert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights.

*Id.* at 721-22. The Seventh Circuit upheld admission of the plaintiff's police practice expert's testimony regarding "the steps a reasonable police investigator would have taken to solve the Morro murder, as well as the information that a reasonable police investigator would have taken into account as the investigation progressed." *Id.* at 722. The court concluded that "McCrary's testimony thus would have helped the jury conclude that the departures from reasonable police practices were so important, severe, and numerous that they supported an inference that Bogucki acted deliberately to violate Jimenez's rights." *Id.* While the *Jimenez* decision did not specifically address admission of CPD General Orders because that trial included a *Monell* claim and CPD policies and practices were admitted into evidence, the analysis of *Jimenez* about the relevance of departures from accepted practices—along with *Brown's* clarification that *Thompson* did not create a *per se* bar to their admission—supports a more nuanced analysis of when admission would be appropriate.

6

And, to the extent Defendants intend to put on testimony or evidence that their conduct was proper or open the door by testifying that their conduct was consistent with their training or the CPD's policies, rules or regulations, Plaintiff should be permitted to demonstrate the ways in which their conduct departed from those same rules and regulations. *See Holmes v. City of Chicago*, 2016 WL 6442117, at *11 (N.D. Ill. Nov. 1, 2016) (admitting generalized testimony of officers' training and practices as relevant to whether officers acted reasonably in false arrest and malicious prosecution case).

The fact that a violation of the usual practices for creating police reports does not by itself conclusively prove a constitutional violation does not justify an order barring the subject entirely. Courts in this district have determined that such evidence is admissible. When issues such as knowledge, intent, motivation, bias, malice, and punitive damages are in dispute, courts in this Circuit have consistently denied similar motions and recognized the probative value of such evidence. *See, e.g.*, *Mays*, 575 F.3d at 650; *Montanez v. Fico*, 2012 WL 2129396, at *9 (N.D. Ill. June 11, 2012); *Jones v. Walters*, 2016 WL 1756908, at *8 (N.D. Ill. Apr. 29, 2016); *Holmes*, 2016 WL 6442117, at *11; *Richman v. Sheahan*, 415 F. Supp. 2d 929, 951 (N.D. Ill. 2006); *Simmons v. City of Chicago*, 2017 WL 3704844, at *4 (N.D. Ill. Aug. 28, 2017); *Tatum v. Clarke*, 2015 WL 6392609, at *14 (E.D. Wis. Oct. 22, 2015); *Gonzalez v. Olson*, 2015 WL 3671641, at *13 (N.D. Ill. June 12, 2015); *Brooks v. City of Chicago*, 2015 WL 3545386, at *5 (N.D. Ill. June 5, 2015); *Javier v. City of Milwaukee*, 2012 WL 4748322 at *6 (E.D. Wis. 2012); *Mendez v. Kreissler*, 2011 WL 5869788, at *4 (C.D. Ill. Nov. 22, 2011); *Young v. Cnty. of Cook*, 2009 WL 2231782, at *2 (N.D. Ill. July 27, 2009); *Galvan v. Norberg*, 2006 WL 1343680, at *3 (N. D. Ill. May 10, 2006).

Furthermore, any hypothetical unfair prejudice or juror confusion is outweighed by the probative value of such evidence to such matters as punitive damages and subjective intent and will be ameliorated by a curative instruction. *See, e.g.*, *Tatum*, 2015 WL 6392609, at *14; *Lopez v. City of Chicago*, 2005 WL 563212, at *10 (N. D. Ill. March 8, 2005); *Charles v. Cotter*, 867 F. Supp. 648, 664 & n.9 (N.D. Ill. 1994); *Threlkeld v. White Castle Sys., Inc.*, 205 F. Supp. 2d 935, 938-39 (N. D. Ill. 2002). Seventh Circuit pattern instruction 7.04 specifically addresses how to handle this exact type of evidence, contemplating its admissibility. *See also generally United States v. L'Allier*, 838 F.2d 234, 242 (7th Cir. 1988) ("Our theory of trial relies upon the ability of a jury to follow instructions"); *Doe by & through G.S. v. Johnson*, 52 F.3d 1448, 1458 (7th Cir. 1995) ("Jurors are presumed to follow limiting instructions.").

Defendants' motion *in limine* No. 4 should be denied.

**5.    Motion for Defendants to have equal trial time as Plaintiff**

This motion should be denied for the following reasons: (1) Plaintiff has the burden of proof and therefore will require more time to present his case and meet his burden of proof than Defendants; (2) Plaintiff intends to call most, if not all, of the defense witnesses (including all of the Defendants and defense-aligned witnesses) in his case in chief. Thus, there is no basis for giving Defendants "equal trial time" when Plaintiff will be calling most or all of the witnesses. The Court should allot each party sufficient time to present their case, but it should not allow the needless presentation of cumulative evidence. *See* Fed. R. Evid. 403.[3] Plaintiff's counsel are experienced trial lawyers and will be respectful of the jury's time. Presumably, defense counsel will do the same.

---

[3] The case cited by Defendants does not require the Court to allot equal trial time to both sides. The Seventh Circuit simply held that where a district court did so, it was not an abuse of discretion.

6. **Motion to bar any use of the terms "code of silence," "blue wall," and other similar generalizations or terms**

It is widely acknowledged that CPD members abide by a code of silence, as determined by numerous juries (*e.g.*, *Obrycka v. City of Chicago*, No. 07-CV-2372 (N.D. Ill.); *Klipfel v. Bentsen*, No. 94-CV-6415 (N.D. Ill.)), the DOJ (*Cazares v. Frugoli*, 2017 WL 1196978, at *3 (N.D. Ill. Mar. 31, 2017)), and City leadership. Defendants' motion should be denied to the extent it seeks to bar evidence or argument that a code of silence existed in any *individual instance, including for the Officers here*, which is relevant and admissible to prove Plaintiff's Fifth Amendment, due process, conspiracy, and failure to intervene claims and Defendants' bias. *E.g.*, *Smith v. Garcia*, 2018 WL 461230, at *5 (N.D. Ill. Jan. 18, 2018) (collecting cases)); *Ford v. Bell*, 2012 WL 1416456, at *4 (N.D. Ill. Apr. 24, 2012) ("The court agrees that the plaintiffs are entitled to develop the theme that a code of silence existed among *these particular officers in this particular incident* … Accordingly, the motion in limine is granted in part and denied in part as follows: (1) the plaintiff may not introduce generalized evidence of a 'code of silence' but (2) may introduce evidence that the officers involved in the events underlying the complaint adhere to a 'code of silence' regarding this alleged violation of the plaintiff's constitutional rights.") (citing *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (internal quotation marks omitted); *Moore v. City of Chicago*, 2008 WL 4549137, at *6 (N.D. Ill. Apr. 15, 2008); *Saunders v. City of Chicago*, 320 F. Supp. 3d 735, 740 (N.D. Ill. 2004) ("Defendants' motion to bar testimony that police officers in general or these officers in particular conspire to cover up one another's bad acts through a 'code of silence' is denied as overly broad. The plaintiff may explore the possibility that the defense witnesses in this case are biased because of loyalty to one another.")); *Maldonado v. Stinar*, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (allowing evidence of bias among the particular officers involves in the incident at issue

there, while excluding generalized evidence of a "code of silence" or "blue wall"); Fed. R. Evid.
607; *U.S. v. Abel*, 469 U.S. 45, 52 (1984) (bias is "almost always relevant").

The code of silence requires that a police officer tacitly accept another police officer's
actions, enabling the suppression of exculpatory information and furthering conspiratorial goals.
Thus, courts routinely admit such evidence even absent a *Monell* claim. *See id.*; *Ford v. Bell*,
2012 WL 1416456, at *4 (N.D. Ill. Apr. 24, 2012); *Jones v. City of Chicago*, 2017 WL 413613,
at *3 (N.D. Ill. Jan. 31, 2017); *Hill v. City of Chicago*, 2011 WL 3205304, at *5 (N.D. Ill. July
28, 2011).[4] No *unfair* prejudice will result from evidence of a code of silence in this
individualized context; thus, it should not be excluded.

**7.  Motion to bar testimony, evidence, or reference to internal investigations of police
    misconduct**

This motion should be denied because it is vague and overbroad. Defendants seek to bar
"Plaintiff, his witnesses, and/or his counsel from offering any testimony, evidence, or references
to any 'IPRA,' 'Office of Professional Standards,' 'Internal Affairs,' or CPD internal
investigation into police misconduct, and other similar references, other than for purposes of
impeachment." Dkt. 374 at 9. They do not identify specific evidence or explain what specifically
they are talking about.

Plaintiff cannot be expected to anticipate, pretrial, all of the different contexts in which
this large swath of unidentified evidence may be relevant at trial. Courts permit the introduction
of other acts evidence under Rule 404(b)(2) for non-propensity purposes including "motive,
opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of
accident." Plaintiff could also seek to use such evidence as impeachment or to refresh

---

[4] Plaintiff does not seek to stereotype officers, as a class, as having a propensity to lie, but rather to show
that a defined group of witnesses, who know and work together, may be biased and even lie for one
another, to serve an agreed-upon goal.

recollection. *Torres v. City of Chicago*, 2015 WL 12843889, at *7-8 (N.D. Ill. Oct. 28, 2015). Out-of-court statements could be admissible other than for the truth of the matter asserted. Defendants have failed to satisfy their burden to demonstrate that such evidence is inadmissible for all purposes. *Noble v. Sheahan*, 116 F. Supp. 2d 966, 969 (N.D. Ill. 2000); *Gonzalez v. Olson*, 2015 WL 3671641, at *26 (N.D. Ill. June 12, 2015); *Austin v. Cook County*, 2012 WL 1530452, at *4 (N.D. Ill. Apr. 30, 2012). Furthermore, if Defendants were to offer character evidence or open the door, Plaintiff should be allowed to present evidence or cross-examine them on these topics. Defendants' motion should be denied and the evidence addressed on a case-by-case basis at trial.

**8. Motion to bar reference to specific instances of alleged misconduct of Defendant Officers**

Some of the Defendants have been accused of having committed misconduct on the job numerous times. This includes at least one instance in which Davis was accused of misconduct as a Youth Officer. This also includes a complaint that Crescenzo told a suspect in custody to give a statement before she could make a phone call and forced her to sign a statement without the presence of her attorney. Another complaint involves Detective Cegielski (who was involved in the investigation even if he has been dismissed as a defendant) threatening and coercing a juvenile suspect he had arrested with Crescenzo into giving a false confession. At the upcoming trial, Defendants would very much prefer to defend their actions during the investigation without the jury hearing that they allegedly committed other bad acts on other occasions. That is an understandable sentiment. While Rule 404(b) permits arguments about the admissibility of other acts, there is much to be said for focusing the jury's attention on the claims in the case, without the distraction of unrelated prior bad acts.

But what is lost on Defendants is that the same time they urge the Court to construe Rule

404(b) narrowly and exclude dozens of accusations of their having done unrelated bad things, Defendants are also fiercely advocating for their right to introduce every bad act they were able to uncover from Plaintiff's entire young life prior to his arrest at the age of 14. After spending an unbelievable amount of money and attorney time, Defendants have dredged up a group of unrelated bad acts allegedly committed by Plaintiff when he was a child.

Plaintiff is not suggesting that the Court's analysis of these issues is perfectly parallel, or that the Court would be required to admit/exclude police misconduct accusations if it admit/excludes accusations against Plaintiff. But the point should not get lost. The very arguments Defendants make so powerfully in urging the Court to prevent the jury from hearing about their own alleged prior bad acts do apply with equal force to the alleged prior bad acts they want the jury to hear about Plaintiff.

Perhaps the Court will apply the law and decide to let in everyone's dirty laundry, but Plaintiff respectfully submits that would not be the proper result. Plaintiff urges the Court to apply Rule 404(b) narrowly, but *uniformly,* and permit the jury to focus on the claims and defenses in the case—not allegations that Plaintiff or individual Defendants allegedly did other bad things on other occasions.

Defendants' motion can be distilled to one main point. They contend that Rule 404(b) should be construed narrowly at this trial, meaning prior bad acts should be excluded and arguments relying on a propensity inference should be rejected. Defendants go on for a number of pages, citing extensive case law, about why these other allegations of police misconduct are not relevant to the police misconduct in this case, and why it would be unfairly prejudicial to them if the jury were to hear them.

As stated, there is merit to those arguments, but they should run both ways. Plaintiff has

moved to bar references to alleged physical and/or sexual abuse of Plaintiff by family members, prior arrests of Plaintiff, gang membership, getting into fights with other kids, or being disciplined in elementary school. *See* Dkt. 370 (Pl.'s Motion *in Limine* No. 2). As discussed in these other motions, Defendants have taken wild liberties in trying to paint Plaintiff as a bad kid, but even crediting Defendants' premise that such things happened, that would only heighten the risk that Plaintiff would lose this case not on the merits of his claims but because of a perception that he had a propensity to commit criminal acts.

Under Defendants' expansive view of Rule 404(b) in the other specified contexts, this evidence should be admitted at trial. Rule 404(b) bars evidence of other acts offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But it allows other-act evidence for "another purpose," including but not limited to "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *United States v. Walter*, 870 F.3d 622, 628 (7th Cir. 2017).

In *United States v. Gomez*, the Seventh Circuit overhauled its test for determining whether evidence is admissible under Rule 404(b), holding that Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." 763 F.3d 845, 856 (7th Cir. 2014) (en banc); see *also id.* at 856 ("[T]he district court should not just ask whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose-or more specifically, how the evidence is relevant without relying on a propensity inference."). After analyzing whether other acts evidence is admissible under Rule 404(b), the Court applies Rule 403 as well. *Id.* at 857.

This other-acts evidence is also relevant to proving punitive damages. The Seventh

Circuit has recognized that other acts are relevant to punitive damages because they show that the defendant intended to cause harm. *Jannotta v. Subway Sanwich Shops, Inc.*, 125 F.3d 503, 517 (7th Cir. 1997). And finally, the use of other acts to impeach claims of innocence by specific contradiction is permissible. *See United States v. Bell*, 624 F.3d 803, 810-11 (7th Cir. 2011); *United States v. Taylor*, 728 F.2d 864, 872 (7th Cir. 1984). Evidence of the prior allegations are also admissible to impeach Defendants' credibility. *United States v. Smith*, 80 F.3d 1188, 1193 (7th Cir. 1996); *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990); *Wrice v. Burge*, 2016 WL 6962838, at *6 (N.D. Ill. Nov. 26, 2016). Or to show that Defendants are biased in their testimony. *United States v. McGee*, 408 F.3d 966, 982 (7th Cir. 2005).

To the extent that Defendants intend to argue that they would never risk their career by withholding evidence or fabricating evidence, their other acts of misconduct that resulted in no discipline by the Department is relevant to support Plaintiff's claims that they did so in this case. *See, e.g., Glenwood Halsted LLC v. Village of Glenwood*, 2014 WL 2862613, at *4 (N.D. Ill. June 24, 2014) (recognizing that evidence related to a defendant's "experience and expertise" would be admissible "state of mind" evidence under Rule 404(b)); *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993) (evidence that police officer committed similar acts of torture toward other arrestees was admissible as evidence of "intent, opportunity, preparation, and plan").

Alternatively, the Court should reserve ruling on these prior incidents of past misconduct as to whether Plaintiff may cross examine Defendant Davis regarding his prior bad acts. If Defendants elicit testimony that Davis would never engage in such behavior, or even if Defendants elicit testimony that overemphasizes excellent work on behalf of the department, Plaintiff should be permitted to inquire about the prior misconduct on cross examination.

14

Finally, Defendant Davis's misconduct is also relevant and admissible on the issue of punitive damages. *See Gonzalez v. City of Elgin*, 2010 WL 3306917, at *2 (N.D. Ill. Aug. 19, 2010) ("Plaintiffs also seek punitive damages. . . so [defendant's] intent is relevant to a matter at issue in this lawsuit.") (citing *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007)); *United States Gypsum Co. v. Lafarge No. Am. Inc.,* No. 03 C 6027, 2009 WL 3871823, at *5 (N.D. Ill. 2009) ("Mental state is a fact of consequence because at least some of plaintiff's claims may support an award of punitive damages, should the jury determine that defendants acted willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.") (internal citations omitted); *Akbar v. City of Chicago*, 2009 WL 3335364, at *1 (N.D. Ill. Oct. 14, 2009) ("[A] plaintiff's claim for punitive damages puts a § 1983 defendant's intent at issue.").

Moreover, the "degree of reprehensibility [of the defendant's conduct] is the most significant factor" in determining punitive damages, and "whether the conduct involved repeated actions" is a factor to be considered when determining reprehensibility. *Estate of Moreland v. Dieter*, 395 F.3d 747, 756-57 (7th Cir. 2005); *see also Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 797 (8th Cir. 2004) ("An incident that is recidivistic can be punished more harshly than an isolated incident") (citing *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003)); *Motherway, Glenn & Napleton v. Tehin*, 2003 WL 21501952, at *7 (N.D. Ill. June 26, 2003) (holding that evidence of other acts of misconduct by defendant "is admissible and is considered for the limited purposes permitted under Fed. R. Evid. 404(b) as evidence that Defendants' actions in the present situation were willful and intentional and part of a larger plan. That evidence demonstrates the reprehensibility of Defendants' conduct here.").

9.    **Motion to bar reference to how the City of Chicago trains, disciplines, monitors, or controls police officers**

Defendants' motion should be denied because it is overbroad. As explained in response to Defendants' motion *in limine* no. 4, above, testimony about deviation from policies, procedures or training can be relevant to issues such as knowledge, intent, motivation, bias, malice, and punitive damages. Simply because the *Monell* claim has been bifurcated does not make evidence of training, discipline, or policies and procedures irrelevant for any purpose. Defendants' motion *in limine* no. 9 should be denied.

10.    **Motion to bar evidence, argument, or references to other cases or allegations of wrongful convictions**

Plaintiff does not oppose this motion.

11.    **Motion to bar testimony, evidence, or argument regarding the passage of time between the incident and the trial in this case**

It is simply a fact that Adam Gray was arrested at the age of 14, taken away from his family, and spent the next 24 years incarcerated. He filed a lawsuit seeking a remedy for the deprivation of his constitutional rights shortly after his conviction was vacated and charges were dismissed. Mr. Gray has been waiting a long time for his day in court. That is just a fact. There is nothing unduly prejudicial about any references to this fact, and it is relevant because the length of time he has been waiting for justice is clearly probative of his damages. Simply put, there is no basis for Defendants to bar Plaintiff from referencing how long he has been waiting for his day in court. It is entirely probative of his damages. The fact that he spent so long in prison is a result of Defendants' fabricating evidence and coercing a false confession and hiding exculpatory evidence from Mr. Gray in the first place. It is entirely appropriate for Plaintiff (and his counsel) to make references to his damages during the trial. Defendants' motion should be denied.

16

To be clear, Plaintiff agrees that neither side should suggest that it was anyone's fault (or the court's fault) that it took so long for the case to be tried. That was no one's fault. However, the length of time it has been since the underlying events is relevant to witness's memories of the events. And, the fact that Plaintiff did not sit on his rights and filed suit promptly after his conviction was vacated and charges were dismissed is relevant.

**12.     Motion to bar any argument, testimony, or evidence that Percy Davis's role as a youth investigator was *per se* improper**

It should go without saying that Defendants' version of events presented in their motion is hotly disputed. *See* Dkt. 374 at 15-16. According to Plaintiff's mother, Gertraud Gray, when Defendants Rokosik and McInerny came to her house the morning of the fire, they asked her where Adam was and told her that they wanted to talk to him. They did *not* tell her that they were going to take him to the police station. Ex. 1 (Gertraud Gray Dep.) at 76-80. And, when Adam's brother Michael later called Ms. Gray to ask her why she was not yet at the police station, she told him that no one told her to be there. *Id.* at 85-86. Thus, contrary to Defendants' assertion otherwise, the Juvenile Court Act requirements in effect in March 1993 were not compiled with.

Nevertheless, Plaintiff does not intend to present any argument, testimony or evidence that Defendant Davis's role as a youth officer was "*per se* improper"—whatever exactly that means. Defendants' motion should be denied as vague. To be clear, Plaintiff is not going to argue that the law did not allow youth officers to be present, or that Defendant Davis's presence as a youth officer in the interrogation room was in and of itself a violation of the law. What Plaintiff is going to argue and present evidence of is the fact that Defendant Davis participated fully in the violation of Plaintiff's Fifth and Fourteenth Amendment rights by coercing his false confession and fabricating evidence against him.

**13. Motion to bar evidence from any witnesses, exhibits, or opinions which were not previously disclosed**

Plaintiff agrees to this motion, as long as it applies to all parties. Defendants should be barred from presenting any witness, exhibits, or opinions that were not previously disclosed.

**14. Motion to bar Plaintiff from introducing new *Brady* theories not listed in Plaintiff's interrogatory responses**

Defendants move to bar Plaintiff from introducing *Brady* theories not listed in Plaintiff's interrogatory responses. In Plaintiff's response to Defendant McInerny's Interrogatory No. 22, Plaintiff answered:

> Defendants withheld the fact that they fabricated and coerced his confession, and fabricated other evidence in the case, including the milk jug or relevance of the milk jug and police reports. (See prior interrogatory answer, above.) Defendant[s] withheld the fact that they had conducted unduly suggestive identification procedures. They withheld that they had threatened Mel Gonzalez and falsified what he supposedly said to them in their reports.

Dkt. 374-2 at 28-29. Plaintiff agrees that these are the *Brady* theories he will be presenting at trial. Defendants have summarized Plaintiff's interrogatory response somewhat incompletely (*see* Dkt. 374 at 18), but the response (and the prior interrogatory response at Dkt. 374-2 at 26-27 (Response to Interrogatory No. 20) is comprehensive and speaks for itself.

**15. Motion to bar evidence and theories not disclosed in Plaintiff's responses to contention interrogatories**

First, Plaintiff's response to Interrogatory No. 22 concerning his *Brady* theories is addressed above, in response to motion *in limine* no. 14. His response is comprehensive and covers what he intends to present at trial.

Second, Plaintiff's response to Interrogatory No. 20 concerning his fabrication theories is also quite comprehensive (despite Defendants' somewhat inaccurate paraphrasing of Plaintiff's answer); it states:

> Defendants fabricated his confession, fabricated police reports relating to his confession, fabricated police reports, fabricated statements of witnesses, such as Mel Gonzalez, and fabricated the milk jug or the relevance of the milk jug. … Defendants also attributed statements to Mel Gonzalez in police reports that he did not say, according to Gonzalez's testimony. Affidavits of witnesses such as Brenda Thomas also show that Defendants fabricated the police reports concerning their interactions and conversations with witnesses and what was said by the witnesses. …

Dkt. 375-2 at 26-27. Furthermore, in response to Interrogatory No. 15, which asks about what the defendants did wrong, Plaintiff provides even more detail about the evidence concerning his contentions and claims. *See id.* at 17-18 (discussing fabricated confession, police reports, witness statements and other evidence, *Brady* evidence, unduly suggestive identification, among other things).

In sum, Plaintiff's answers to these interrogatories cover the entire field, and so there is no basis for barring Plaintiff from proving any of his claims or theories at trial. Defendants' motion is ill-suited to Plaintiff's actual answers to these interrogatories. Their motion seems geared towards plaintiffs who failed to respond entirely to contention interrogatories or did not provide any evidence in response. That is simply not the case here.

Moreover, even if there was something that Plaintiff did not specifically reference in response to a contention interrogatory, the Court should not bar the evidence if it was otherwise disclosed during discovery. Under Rule 26(e), a party must timely supplement or correct its interrogatory response if that party learns that the response is incomplete or incorrect and "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Plaintiff's interrogatory responses were submitted at the beginning of discovery, before depositions occurred. The parties were present for the depositions and additional discovery, and any information elicited at depositions or otherwise in the discovery process was made known to all the parties at that time.

Rule 37(c)(1) prohibits a party from relying on information that was not specifically disclosed unless the failure to supplement or amend the interrogatory was substantially justified or harmless. Any additional information learned during discovery is fair game because it was made known to all the parties at that time. So even if Plaintiff's interrogatory responses were incomplete (which they weren't—they included every possible theory), any failure to supplement was harmless. Defendants' motion must be denied.

16. **Motion to bar any testimony, reference, or evidence of any other incident of police misconduct in the media**

Plaintiff does not oppose this motion.

17. **Motion to bar lay witness testimony regarding Plaintiff's alleged physical and emotional injuries**

Defendants argue that Plaintiff, his attorneys, and other witnesses (including, at least, Plaintiff's family members and friends), should be barred from "introducing lay witness opinions regarding Plaintiff's physical or emotional injuries Plaintiff claims he suffered during and after the occurrence." Dkt. 374 at 23. Defendants' motion should be denied because it is overly broad in seeking the exclusion of permissible and relevant testimony from Plaintiff and other fact witnesses. Plaintiff certainly is allowed to present evidence about his symptoms, depression, and other medical concerns subsequent to his wrongful arrest and two-and-a-half decades of wrongful conviction.

District courts within the Seventh Circuit routinely deny broad motions that seek to bar this type of testimony. *Woods v. Amazon.com, LLC,* 2019 WL 2323874, at *6 (N.D. Ill. May 30, 2019) ("This motion sweeps in too much evidence that is potentially admissible under Rule 701, which permits lay witnesses to offer testimony '(a) rationally based on the witness's perception; (b) helpful to . . . determining a fact in issue; and (c) not based on scientific, technical, or other

20

specialized knowledge[.]' Fed. R. Evid. 701."); *Taylor v. Ne. Ill. Reg'l Commuter R.R. Corp.,*
2008 WL 244303, at *6 (N.D. Ill. Jan. 28, 2008) (defendant's motion to bar plaintiff from
testifying about her medical condition was "overly broad," and the plaintiff could testify about
her symptoms, pain, and the treatment she underwent.); *Fields v. City of Chicago,* 2018 WL
1652093, at *12 (N.D. Ill. Apr. 5, 2018) (denying defendants' motion *in limine* to bar "medical"
testimony from plaintiff regarding his liver surgery and what physicians told him about his
condition because "whether Plaintiff's testimony concerning his medical condition is improper
opinion testimony or hearsay will depend on the context of the testimony and the purpose for
which such testimony is used.").

   Plaintiff can testify about his symptoms, when they began, their duration, and other facts
within his perception. *E.g.*, *Mitchel v. Buncich,* 2013 WL 275592, at *7 (N.D. Ind. Jan. 24, 2013)
(plaintiff could testify that his "'medical symptoms' were nonexistent prior to his
incarceration")). Other lay witnesses can testify as to their personal observations of Plaintiff
before and after certain events or injury. *Johnson v. Amazon.com LLC,* 2019 WL 2323876, at *5
(N.D. Ill. May 30, 2019) (defendant's request to "bar lay witnesses from testifying about
[plaintiff's] mental and emotional condition that resulted from his injuries" would "exclude
potentially admissible testimony because lay witnesses are permitted to testify about their
personal observations as to how [plaintiff's] emotional condition changed after he was injured on
the project"). Further, lay witnesses can "lay the groundwork for the jury to infer causation by
testifying about his present health conditions and whether they appeared prior to the incident."
*Scott v. Suelter,* 2013 WL 2181128, at *7 (C.D. Ill. May 20, 2013).

   Defendants reach too far in asking this Court to bar Plaintiff and other lay witnesses from
using any medical terms, and they do not cite any case law to support this argument. In fact,

courts have recognized that lay witnesses, who have had medical conditions, especially for periods of years, would have medical terms within their knowledge and perception. *Williams v. Mary Diane Schwarz, P.A.,* 2018 WL 2463391, at *11-12 (N.D. Ill. June 1, 2018); *Mickey v. Dargis,* 2004 WL 887361, at *2 (N.D. Ill. Apr. 23, 2004) (plaintiff "may testify to his treatment, *e.g.,* sutures and prescriptions, and how he felt at various times—matters of personal knowledge and observation well within his competence").

Courts have also refused to bar lay witnesses from using the word "depressed." *Farfaras v. Citizens Bank and Trust of Chicago,* 433 F.3d 558, 565-66 (7th Cir. 2006) (lay opinions may include testimony that another person is "depressed," when it is clear to the jury that the witness is using the word as an adjective and not as a clinical or professional evaluation); *EEOC v. AutoZone Inc.,* 631 F. Supp. 2d 1076, 1080 (C.D. Ill. 2009), *rev'd in part on other grounds E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635 (7th Cir. 2010) (refusing to bar plaintiff and his wife from using the word "depressed" to describe him). A plaintiff may testify as to his "own perception of his physical and mental health." *Carter v. Griggs,* 2019 WL 5538144, at *2 (W.D. Wis. Oct. 25, 2019). In *Scott v. Suelter,* 2013 WL 2181128, at *7 (C.D. Ill. May 20, 2013), the District Court noted a "witness does not need to be a doctor to discuss his own health in general terms. . . . A plaintiff may testify about his own perception of his physical and mental health, before and after the incident, which includes recounting any pain, fear, or anxiety he experienced during those times." *Id.* (internal quotations omitted). *See also Larsen v. Barrientes*, 2010 WL 2772325, at *3 (N.D. Ind. 2010) (same).

**18.     Motion to bar any evidence, reference, or testimony challenging the conduct of non-party officers**

Defendants seek to bar "[a]ny evidence, reference, or testimony regarding non-party officers or officers previously dismissed. . . ." Dkt. 374 at 23. This motion should be denied as

overbroad. The parties have already submitted an agreed motion *in limine* that they "will not reference the fact that there were claims in the case or defendants in the case which have been dismissed." Dkt. 385 at 18. If this motion were granted as written, it would literally bar Plaintiff from "any reference" to any "non-party officer" or dismissed defendant such as Detective Cegielski. That is not going to work because there are lots of non-party officers who had some role in the investigation. For instance, Detective Cegielski was one of the officers who claimed being able to smell gasoline in the milk jug. *See* Dkt. 271 (SJ Resp.) at 24. Cegielski's name is also on some of the police reports, including the report concerning Brenda Thomas's supposed identification. *Id.* at 26, 39 n.7; Dkt. 259-69. Plaintiff did not oppose dismissal of Cegielski at summary judgment but that does not mean that all references to him at trial should be barred. There may be instances where his name is may come up. Defendants' motion should be denied; this is the kind of issue that is better decided in the context of how the evidence arises at trial.

## 19.     Motion to bar live testimony from Brenda Thomas at trial and any evidence, argument, or testimony, to Brenda Thomas's affidavit

At the beginning of discovery, on August 7, 2018, Plaintiff disclosed Brenda Thomas a potential witness under Rule 26(a)(1). Ex. 2 (Pl.'s MIDP Disclosures) at 3. Thomas was also listed on Defendants' disclosures. Ex. 3 (Ind. Defs.' MIDP Disclosures) at 6. Thus, Thomas was properly disclosed as a potential witness during discovery. Everyone knew from the very beginning of this case that Thomas was a potential witness. Plaintiff also listed her as a potential trial witness on the Final Pretrial Order. Dkt. 385 at 5. Having done this, Thomas has been properly disclosed as a potential trial witness. There is nothing in the Federal Rules of Civil Procedure or the law or in any of the cases cited by Defendants that requires a witness *to be deposed* in order to call her as a witness at trial.

During discovery, Plaintiff attempted to find Thomas in order to depose her and were

unsuccessful. Defendants did not even make any such efforts (to Plaintiff's knowledge) to find her. But Thomas is a third-party witness. She is not in Plaintiff's control, and Defendants cannot bar Plaintiff from calling her as a witness because the parties did not obtain her deposition during discovery—particularly when Defendants did not even make any attempts to depose her. There is no rule that requires all potential trial witnesses to be deposed, and Defendants have cited none. In sum, Defendants' motion to bar Plaintiff from calling Thomas to testify at trial should be denied.

In addition, as Plaintiff explains in his motion *in limine* no. 4 (Dkt. 372), Defendants should not be allowed to use Thomas's criminal trial testimony at trial. Alternatively, if they are allowed to use her criminal trial testimony, the Court must allow the use of her affidavit. *See* Dkt. 372 at 8-11.

**20.    Motion to bar evidence or argument relating to constitutionally appropriate police practices to insinuate wrongdoing**

Some motions *in limine* make more sense than others. This one makes no sense at all.

Defendants are essentially asking this Court to strip from the jury's consideration much of the testimony and evidence about what happened during Adam Gray's interrogation. The rationale, according to the Defendants, is that some of the circumstances and tactics that were used are not *per se* unlawful and, as such, all such references must be excluded from the testimony about what happened during Plaintiff's interrogation.[5]

There is a far more obvious solution to the concern raised by the Defendants. The Court's jury instruction is going to inform the jury very clearly what sorts of interrogation tactics are lawful and which are impermissible. *See* Dkt. 385-18 at 22-23 (Pl.'s Proposed Jury Instruction No. 21). Defendants will thus be free to make the argument to the jury which portions of the

---

[5] Unsurprisingly, the facts as Defendants present them in their motion are hotly contested.

interrogation were perfectly constitutional, while also denying having engaged in those that were not. Were Plaintiff's counsel to unwisely suggest anything inconsistent with the law, the Court's own instruction would get in the way. *See Francis v. Franklin*, 471 U.S. 307, 324, n.9 (1985) (explaining that it is a "crucial assumption" underlying our jury system that juries follow the instructions given to them).

The reason why this solution is so much more workable than attempting to "sanitize" the testimony about what actually occurred is because, at bottom, the test is itself a "totality of the circumstances" inquiry. *Schneckloth v. Bustamonte,* 412 U.S. 218, 225-26 (1973); *Arizona v. Fulminante,* 499 U.S. 279, 285 (1991). This totality of the circumstances test takes into consideration both the characteristics of the accused and the details of the interrogation. *Schneckloth,* 412 U.S. at 225-26; *Fulminante,* 499 U.S. at 285. The Seventh Circuit explained this plainly in *Dassey v. Dittman,* 877 F.3d 297 (7th Cir. 2017), noting that the Supreme Court "does not draw bright lines on this subject." *Id.* at 304.

Thus, a tactic that might be deemed borderline tolerable under some circumstances could shift over into intolerably coercive territory when considering the subject's age, amount of sleep, deprivation of contact with family, or other factors. Although it is true that some tactics or factors cannot *standing alone* render an interrogation fatally coercive, the whole point of the totality-of-the-circumstances inquiry is to consider the totality of the circumstances.

Plaintiff's testimony that he was force-fed the confession, for instance, cannot be fairly evaluated if the jury is led to believe he just sat down and confessed. The rest of the circumstances and tactics, such as trust-building, sleep deprivation, confusing him with the Xerox machine trick, *even if not per se unlawful standing alone*, necessarily factor into whether

any given alleged unlawful tactic was in fact what overbore Plaintiff's will.[6] The two categories cannot be untangled in any sensible way. As long as the jury understands what is and what is not constitutionally allowed (which it will, given the jury instructions and closing arguments) there is no danger that needs to be eliminated—and certainly none that could justify attempting to truncate and eliminate all kinds of testimony about what happened during the interrogation.

With that in mind, none of the cases cited by Defendants (*see* Dkt. 374 at 28) stand for the proposition that any given circumstance or tactic is *per se* permissible. The Xerox machine trick by Crescenzo, on a 14-year-old Adam Gray, cannot be separated from all the other tactics imposed on him that day—including telling Mr. Gray that he would get the electric chair if he didn't confess, promising him that he would be taken to school if he confessed, falsely telling him that his mom called and said she wasn't coming to the station because she didn't care about him, and so on. In almost every instance, the issue of involuntariness requires examination of the totality of the circumstances—including the tactics used by the police and the characteristics of the accused—and that is what the jury must consider here as well. *See e.g., United States v. Jenkins,* 938 F.2d 934, 938 (9th Cir. 1991) (explaining that "ordinarily," voluntariness is

---

[6] Defendants' characterization of the evidence regarding the Xerox machine is incorrect. Plaintiff testified that, at some point between the interrogations, Crescenzo brought him to a Xerox machine, telling him that the lead in the gasoline on his hands would show up if he had lit the fire. Ex. 4 (Adam Gray Dep., pt. 1) at 332-33. Crescenzo Xeroxed Plaintiff's hand, pulled the copy out and said, "Aha, see, it's not nice to lie to the police." Crescenzo insisted that because Plaintiff had gasoline lead on his hands, that's why his hands showed up on the Xerox machine. Plaintiff insisted that it was pencil lead because he had been drawing with his friend Mel Gonzalez the night before. *Id.* Plaintiff testified, "I had enough sense to know it was a Xerox machine, but with everything that I had coming at me, it was just another massive point of confusion to me. I didn't understand why he was doing that. I didn't understand if he was telling the truth or not. . . . I didn't know why he was lying. . . . Not just in this instance, but in every other instance that took place. . . . I don't know what's going on. I don't know why he's insisting that I have gasoline on my hands when I don't and don't know why he made me go through the charade of putting my hands on a Xerox machine when it made absolutely no sense. **I knew it was a Xerox machine, but didn't know it, because I was starting to question my own sanity.**" *Id.* at 333-34 (emphasis added). As Plaintiff explained, the Xerox machine incident was "another moment of helplessness and befuddlement." *Id.* at 343. In other words, this incident was absolutely part of the totality of the circumstances of the interrogation.

26

determined by the "totality of the circumstances," with the one exception that physical torture is *per se* inadmissible).[7]

Finally, Plaintiff also notes that the question of a confession's reliability (whether it is true or not) is separate and apart from voluntariness. *Rogers v. Richmond,* 365 U.S. 534, 540-41 (1961); *Johnson v. Trigg,* 28 F.3d 639, 641 (7th Cir. 1994). As the Seventh Circuit explained in *Aleman v. Village of Hanover Park,* 662 F.3d 897 (7th Cir. 2011), a police trick or tactic that may not render the confession involuntary nevertheless may induce an unreliable confession. *Id.* at 906-07. That proposition has been discussed extensively in Dr. Melissa Russano's report and the related *Daubert* briefing. Dkts. 330 (Resp. to Mot. to Bar Russano), 319-1 (Russano Report).

In other words, even if Defendants were correct (which they are not) that certain testimony concerning the interrogation is not relevant to the voluntariness inquiry, that same testimony remains very relevant to the reliability question, which is very much at issue here as well. The evidence that Defendants seek to bar concerns either the characteristics of the accused or the details of the interrogation, which not only implicate voluntariness, *see Schneckloth,* 412 U.S. at 225-26, but, as Dr. Russano explains in detail, these factors also may induce an innocent person to confess falsely. Because innocence will be hotly contested at this trial, the testimony Defendants seek to bar is thus independently admissible on this ground as well.

At the end of the day, Defendants have failed to cite a single Section 1983 case granting the relief they seek here. A similar motion was denied by Judge Kendall in *Andersen v. City of Chicago.* Ex. 5 (*Andersen* Order) (denying motion to exclude any mention of practices employed

---

[7] To highlight just one example, in *Aleman v. Village of Hanover Park,* 662 F.3d 897, 906 (7th Cir. 2011), the Seventh Circuit plainly held that the police's "false statement did destroy the information that [the accused] required for a rational choice." *Id.* (citing *United States v. Rutledge,* 900 F.2d 1127, 1130-31 (7th Cir. 1990)).

by police during interrogation which were lawful). This Court should not be the first to try to limit the testimony in the manner proposed here.

21. **Motion to bar any argument, testimony, or inference that any police officer falsely testified or provided misleading testimony at Plaintiff's criminal trial or during any criminal proceeding**

While it is of course undisputed Defendants cannot be *liable* for their false testimony against Plaintiff under federal law, that fact does not preclude Plaintiff from arguing that by testifying consistent with the evidence they fabricated or the actions they have suppressed, they thereby testified falsely at Plaintiff's criminal proceedings. By doing so, Defendants completed the alleged torts. *See Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (fabricated evidence becomes actionable once it is introduced at trial); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1028 (7th Cir. 2006).

*Briscoe v. LaHue*, 460 U.S. 325 (1983), does not reach so far, and the Seventh Circuit has explicitly rejected the notion that the Defendants can immunize their investigative conduct by subsequent testimony. *Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017) ("Here, the detectives testified about [plaintiff's] "confession" and authenticated their false reports memorializing it; the reports were then introduced into the trial record. If an officer who fabricates evidence can immunize himself from liability by authenticating falsified documentary or physical evidence and then repeating the false "facts" in his trial testimony, wrongful-conviction claims premised on evidence fabrication would be a dead letter. . . . When the detectives falsified their reports of a nonexistent confession, it was entirely foreseeable that this fabricated "evidence" would be used to convict Avery at trial for Griffin's murder. That was, of course, the whole point of concocting the confession."); *cf. Fields v. Wharrie,* 740 F.3d 1107, 1114 (7th Cir. 2014) ("A prosecutor cannot retroactively

28

immunize himself from conduct by perfecting his wrong-doing through introducing the fabricated evidence at trial and arguing that the tort was not completed until a time at which he had acquired absolute immunity.").

The upshot of the rule enunciated in both *Avery* and *Fields* is that Plaintiff should be permitted to argue that Defendants gave false testimony at his criminal proceedings based on investigative misconduct. *Avery*, 847 F.3d at 442 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993)). Doing so does not convert his claims for pre-trial misconduct into something making them liable for that testimony; it merely confirms that the Defendants completed the constitutional torts by testifying in accordance with their pre-trial fabrications at trial. That Defendants testified in accordance with the evidence they fabricated is part of Plaintiff's fabrication claim. Plaintiff should be able to ask about the entire sequence of events related to the fabrication because it is part of the case narrative.

Defendants' subsequent steps at trial are also relevant to Plaintiff's conspiracy claim and probative of an earlier conspiracy. *See United States v. Lindemann*, 85 F.3d 1232, 1240 (7th Cir. 1996) ("Even if a conspiracy has terminated, evidence of subsequent acts may be admitted to elucidate the nature of the prior conspiracy." (citing *United States v. Testa*, 548 F.2d 847, 852 (9th Cir. 1977)).[8]

Finally, taking a step back, Defendants seem to asking this Court to shield them from cross-examination based on prior sworn statements made regarding the events at issue in this case—statements that are non-hearsay admissions by a party opponent and are standard fare for impeachment—because *Briscoe* immunizes them from damages for perjury. However,

---

[8] At most, a limiting instruction can be given that informs the jury that the officers may not be liable for their testimony during Plaintiff's criminal trial or before the grand jury, and only for their conduct outside of those contexts. Any potential for confusion (which seems minimal at best) can be resolved in this manner.

*Briscoe* itself provides that cross-examination about alleged perjury is the way to ferret out the truth. 460 U.S. at 333-34 ("But the truth-finding process is better served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.") (citation omitted). There is no case that Plaintiff is aware of that forbids a plaintiff from cross-examining a defendant with his own prior statements, and Defendants offer no authority for such a sweeping and unprecedented ruling. The motion should be denied.

22. **Motion to bar any argument, testimony, or reference to Plaintiff's time in custody as a "kidnapping"**

Plaintiff has colorfully referred to his wrongful arrest and imprisonment as a "kidnapping." Defendants move to bar Plaintiff from describing what happened to him in this way because it will "confuse and mislead" the jury. Their motion is meritless and should be denied.

No jury is going to think that Plaintiff is somehow giving a legal opinion about being "kidnapped." Obviously, Plaintiff is not a lawyer. Plaintiff describes feeling "kidnapped" because, as a child, he was taken from his family against his will and confined in a detention facility (and later, prison) for an alleged crime he did not commit. He should be permitted to describe his own feelings about what happened to him in his own words. It is highly probative of his damages and not unduly prejudicial under Rule 403. Defendants' motion should be denied.

23. **Motion to admit the deposition testimony of Karrie Kelly**

Plaintiff does not object in general to the designation of Karrie Kelly's deposition testimony, but Plaintiff has objections to specific designations. The parties' designations and objections to those designations were submitted with the proposed Final Pretrial Order. *See* Dkt.

385-4 at 24-29; Dkt. 385-9.

Respectfully submitted,

s/ Elizabeth Wang
One of Plaintiff's Counsel

| | |
|---|---|
| Jon Loevy | Elizabeth Wang |
| LOEVY & LOEVY | LOEVY & LOEVY |
| 311 N. Aberdeen Street, Third Floor | 2060 Broadway, Suite 460 |
| Chicago, Illinois 60607 | Boulder, CO 80302 |
| (312) 243-5900 | (720) 328-5642 |
| jon@loevy.com | elizabethw@loevy.com |

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, certify that on October 28, 2022, I filed a copy of the Plaintiff's Response via the Court's electronic filing system and thereby served a copy on all counsel of record.

s/ Elizabeth Wang

31