IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ADAM GRAY, | ) | |
| | ) | Case No. 18 CV 2624 |
| Plaintiff, | ) | |
| | ) | Judge Edmond E. Chang |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S POSITION STATEMENT REGARDING THE AUTHORITY OF THIS COURT TO ORDER KEY WITNESSES TO TESTIFY AT TRIAL BY VIDEO**

Plaintiff Adam Gray, by and through his attorneys, submits this position paper pursuant to the court's minute order dated April 17, 2023.

## Introduction

At the pretrial conference, this Court called for position statements on whether the key alleged eyewitness in the case, Karrie Kelly, could be required to testify by video at trial. *See* Ex. A (Final Pretrial Conference Transcript) at 109. The Court's resulting minute order asked for briefing on this issue as to the other alleged eyewitness, Brenda Thomas. Dkt. No. 463. Pursuant to both the Court's oral and written instructions, this Position Statement addresses both witnesses. This Court has authority to order live video testimony from key eyewitnesses and such an order would not create an undue burden.

**I.  Karrie Kelly**

There is no more important witness in the case than Karrie Kelly. Ms. Kelly claims to have seen Mr. Gray running in the alley shortly before the fire. She originally gave the police a description of a young man and what he was supposedly wearing. By the time of trial, however, she

1

had identified Adam Gray, and her identification was a key piece of evidence in his wrongful conviction. Plaintiff alleges Ms. Kelly was manipulated by the police, and is being manipulated to this day, including at her deposition. It is Plaintiff's position that this Court can and should compel Ms. Kelly to testify by video within one hundred miles of her home. The relevant background is as follows.

A.     **Background**

Ms. Kelly gave a deposition. She testified that before her deposition, she met with Mr. Nathan at a Starbucks and went over the transcript of her testimony from the original criminal trial with him. She testified that she met with Mr. Nathan because she thought she "had to," *see* Ex. B (Kelly Dep.) at 76, and she declined to speak to Plaintiff's investigator about the case. Plaintiff's counsel was unable to speak with her before her deposition. Plaintiff bears the burden of proof and wishes to call Ms. Kelly adversely in his case at trial, but at the deposition, Mr. Nathan questioned Ms. Kelly first and she, predictably after their meeting, adhered to her trial testimony. If the jury is going to hear Ms. Kelly's testimony at trial, Plaintiff's counsel believes the jury should have an opportunity to hear her testimony live and Plaintiff's counsel should be granted the opportunity to subject her to cross-examination about why her identification evolved over time.

To be perfectly clear, Plaintiff does not agree to use Ms. Kelly's deposition testimony and would object to any attempt to use it as a substitute for live trial testimony. If the jury is going to hear her testimony, Plaintiff strongly requests the opportunity to cross-examine Ms. Kelly at trial.

At the pretrial conference, the Court asked Mr. Nathan if the Defendants wanted her testimony live at trial. Mr. Nathan answered affirmatively, stating in relevant part: "If she was in Chicago, *then we would want her* -- you know, we might not be able to establish unavailability."

Ex. A at 107 (emphasis added). The Court then asked Mr. Nathan: "Do you want her to -- does the defense want her to testify by video?" *Id.* At that point, Mr. Nathan tipped his hand. Contradicting his earlier answer that he would want her live testimony if only she was in Chicago, Mr. Nathan answered the Court's question about whether he wanted her live testimony by video as follows: "We do not want to push her any more and compel her. We're not seeking to compel her additional testimony. We're satisfied with deposition testimony and her unavailability." *Id.* Defense counsel clearly recognizes the importance of Ms. Kelly's live testimony and is endeavoring to prevent it by gameplay around her unavailability.

The Court summarized its preliminary thoughts on the issue of live video testimony as follows:

> Okay. Yeah, if I deem her testimony important enough and the circumstances otherwise suggest that it would not be an undue burden on her, then I can require to testify by video because under Rule 45, as long as she's attending trial within 100 miles of her residence -- I think by video that that does qualify.
> And again, she's not a party. I don't want to put unreasonable burdens on her, but if it is otherwise appropriate, then I can compel her to do so.

*Id.* at 108.

On closer examination, this Court's initial intuition regarding Rule 45 proved correct. The law clearly supports this Court's authority to order Ms. Kelly to appear via video at trial, especially absent any burden, much less undue burden, and given the critical importance of the witness.

**B.     Service of Ms. Kelly with a Trial Subpoena**

There is a threshold problem with admitting Ms. Kelly's deposition testimony predicated on unavailability. At the final pretrial conference, the Court noted that it had specifically instructed the parties to promptly serve their trial subpoenas back on December 4, 2022. Ex. A at 101. A witness is not unavailable, and their prior deposition testimony is thus not admissible, if

3

no party has attempted to serve them in a timely fashion.

When the Court asked Mr. Nathan whether the Defendants had served Ms. Kelly with a trial subpoena, Mr. Nathan responded, "I believe we did." Ex. A at 105. On April 18, the day after the pretrial conference (after the Court gave its warnings about timely trial subpoenas), Defendants for the first time served Plaintiff with a copy of a trial subpoena sworn on April 18 stating that Ms. Kelly had been served on April 13.[1] Ex. C (defense subpoena to Kelly). Troublingly, this was after defense counsel expressed indignation about having been sandbagged by not receiving service of the Thomas subpoena. In other words, when the Court expressed concern that the Thomas subpoena had not been immediately served, defense counsel neglected to mention to the Court that they knew (but no one else knew) that Defendants had previously served Kelly without providing a copy of the subpoena to Plaintiff.

In any event, that subpoena served by Defendants called for Ms. Kelly to come to Chicago, *id.*, which Mr. Nathan has already represented to the Court she was unwilling to do. Plaintiff's investigator is flying to Phoenix this weekend to serve Ms. Kelly with a trial subpoena to testify at the federal courthouse in Phoenix, close to her home. At that point, she will be under subpoena by both sides to testify at trial.

So where does that leave things? The Court could certainly justify an order barring any testimony from Ms. Kelly at all, including her deposition testimony, given the failure of both sides to promptly serve her.[2] But if she is going to testify, the only just result is to enforce Plaintiff's

---

[1] The subpoena was issued from the District of Arizona. *See* Ex. C. Rule 45 states, "A subpoena must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2).

[2] Defendants' delay was not a matter of not being able to find her. As Mr. Nathan confirmed on the record when asked if he had shared her contact information: "I absolutely will give them the phone number. It's the exact phone number that she's had since discovery. She's -- I believe we served her at the same address that she was served at for discovery." Ex. A at 107. The Court asked Mr. Nathan if he was in touch with her by a

forthcoming trial subpoena to call her to testify live by video.

### C. This Court Can and Should Compel Ms. Kelly to Testify by Video within 100 Miles Her Home

If the Court decides to excuse both sides' failure to serve Ms. Kelly with a trial subpoena earlier, the Court should enforce the trial subpoena requiring her to testify live by video conference. Ms. Kelly's deposition testimony is insufficient. It is well established that live witness testimony at trial is superior and greatly preferred to other alternatives, including deposition transcripts and video. *See Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293, 308 (7th Cir. 2010); *Guingnard v. Nat'l R.R. Passenger Corp.*, 2012 WL 1108242, at *4 (N.D. Ill. Apr. 1, 2012) ("The preference, of course, is for live testimony over deposition testimony at trial.") (internal quotation marks omitted); *Childress v. Ford Motor Co.,* 2003 WL 23518380, at *3 (N.D. Ill. 2003); *Household Fin. Servs. Inc. v. Prestige Fin. Servs. Corp.,* 1999 WL 608705, at *2 n. 8 (N.D. Ill. 1999). This preference reflects the settled belief that a trier of fact "should not be forced to rely on deposition evidence when a deponent's live testimony can be procured." *Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd.,* 776 F. Supp. 1271, 1276 (N.D. Ill. 1991).

This is especially true where, as is the case here, the witness in question is "instrumental to a party's case." *Thomas*, 604 F.3d at 308. Ms. Kelly is a critical witness. As the Court knows, Ms. Kelly claimed to have identified Plaintiff in a lineup conducted by defendant detectives even though she did not identify him when first interviewed by a beat officer. This inconsistency is a critical issue for Plaintiff at trial.

Like other systems, courts evolve. Video capabilities have improved and reliance on remote

---

phone number, and Mr. Nathan said that he was. *Id.* at 109.

testimony has grown since the COVID-19 pandemic, but courts have been permitting and encouraging live testimony by video conference since the technology first came available several decades ago. *See, e.g., In re San Juan Dupont Plaza Hotel Fire Litig.,* 129 F.R.D. 424, 426 (D.P.R. 1989); *In re Vioxx Products Liab. Litig.*, 439 F. Supp. 2d 640, 642 (E.D. La. 2006) (noting that Fed. R. Civ. P. 43 expressly permits live videoconference testimony, and "that there has been an increasing trend by federal courts allowing and by legal commentators advocating for the use of contemporaneous transmission of trial testimony"); *Walters v. Mayo Clinic Health Sys.-EAU Claire Hosp., Inc.,* 2014 WL 257548, at *1 (W.D. Wis. Jan. 23, 2014) (where witness was in Arizona and case was pending in Western District of Wisconsin, "court would also support [witness] being subpoenaed to testify at trial by live video feed should he refuse to appear in person"); *In re Actos (Pioglitazone) Products Liab. Litig.,* 2014 WL 107153, at *9 (W.D. La. Jan. 8, 2014) (analyzing intersection between Rules 43 and 45 and explaining that "contemporaneous transmission is now equally incorporated as proper trial procedure and an acceptable means of appearing at court and trial, as were written and video depositions, respectively, in the past. The subpoena power of Rule 45 of the Federal Rules of Civil Procedure is merely employed to facilitate yet another, now permitted, trial procedure and method of appearance."). The Rule specifically contemplates it. *See* Fed. R. Civ. P. 43 ("For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."). *Cf. Perotti v. Quinones,* 790 F.3d 712, 723 (7th Cir. 2015) ("Provisions of both Federal Rule of Civil Procedure 43 and the Prison Litigation Reform Act of 1996 ('PLRA') implicitly acknowledge that technological advances have made remote appearance and testimony a much more realistic possibility than it was in times past.").

Federal Rule of Civil Procedure 45(c) states that a "subpoena may command a person to attend a trial ... within 100 miles of where the person resides." Because live video testimony requires a witness to attend the trial only from a location within their immediate radius, such a subpoena would comply with the underlying goals of Rule 45. Most courts, including courts in this District, have read Rule 45 in this way.

For example, in *United States v. $110,000 in United States Currency,* Judge Leinenweber explained that because "Rule 45(c)'s geographic limits were crafted to protect third parties from the undue burden of traveling more than 100 miles to provide testimony ... in a proceeding in which they are not a party," virtual testimony prevents the harms Rule 45(c) is concerned with and therefore can be properly ordered by the court. 2021 WL 2376019, at *3 (N.D. Ill. 2021) (citing Fed. R. Civ. P. 45(c)'s advisory committee note to 2013 amendment); *see also In re Newbrook Shipping Corp.,* 498 F. Supp. 3d 807, 816 (D. Md. 2020) (emphasizing that a subpoena for a remote deposition did not require a deponent to travel at all and therefore was consistent with Rule 45) (abrogated on other grounds).

Other courts have found the plain language of Rule 45(c) persuasive. For example, in *International Seaway Trading Corp. v. Target Corp.,* the court explained, "[v]irtual attendance of this nature is consistent with the plain language of Rule 45(c)(1)(A) because ... [the witness] can comply with the deposition from his home or anywhere else he chooses that is within 100 miles of his residence." 2021 WL 672990 at *5 (D. Minn. 2021). Many other courts have reached the same conclusion for similar reasons. *See, for example*, *In re Xarelto Rivaroxaban Prods. Liab. Litig.,* 2017 WL 2311719, at *2 (E.D. La. 2017); *Mullins v. Ethicon, Inc.,* 2015 WL 8275744, at *2

(S.D.W. Va. 2015); *In re Actos,* 2014 WL 107153.[3]

And while many courts have concluded that Rule 45 inherently allows for remote testimony in this context, some of these cases specify that a Rule 45 subpoena can only be used to compel a witness to testify remotely in this manner upon a showing of good cause. *See Official Committee of Unsecured Creditors v. Calpers Corporate Partners LLC,* 2021 WL 3081880, at *3 (D. Me. 2021) (explaining that Rule 43(a) and Rule 45(c) should be read in conjunction and therefore compel remote testimony "only upon a showing of good cause in compelling circumstances."); *In re 3M Combat Arms Earplugs Prods. Liab. Litig.,* 2021 WL 2605957, at *4 (N.D. Fla. 2021); *In re Taxotere (Docetaxel) Prods. Liab. Litig.,* 2021 WL 6202422 at *3 (E.D. La. 2021) ("[T]his Court joins another section of this Court and at least two additional courts within the Fifth Circuit in holding that, for good cause and compelling circumstances and with the appropriate safeguards, Rule 45 is satisfied so long as the witness is not compelled to testify at a location beyond 100 miles from the witness's residence"); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.,* 2016 WL 9776572, at *2 (N.D. Tex. 2016).

Even if this Court departs from the cases holding that good cause is not required, it should still enforce the trial subpoena for video testimony because good cause exists here, given the strength of Plaintiff's interest in cross-examining Ms. Kelly. Ms. Kelly is the most critical witness at this trial. If the jury believes Ms. Kelly's testimony, it changes the course of the trial. She gave a

---

[3] To be sure, not every court has reached the same conclusion on this somewhat new question. For example, in *Broumand v. Joseph,* 2021 WL 771387, at *10 (S.D.N.Y. 2021) the court read Rule 45(c) to center around the location of the questioner, rather than the location of the witness. But, as explained previously, this understanding of Rule 45(c) is inconsistent with the plain reading of Rule 45(c) and the advisory committee notes. This Court should not depart from this District's previous rulings because to do so would be inconsistent with the text of the rule and policy concerns animating it.

deposition in the immediate aftermath of meeting defense counsel at Starbucks to go over her criminal trial transcript. The opportunity to cross-examine Ms. Kelly in Plaintiff's case in chief and test her story is paramount.

Nor is any potential burden on Ms. Kelly undue. Any witness experiences some burden by definition, but there is no unusual cost to Ms. Kelly associated with requiring her to testify by live video conference. Plaintiff's counsel has located a court reporter's office with video testimony capability that is less than six (6) minutes from Ms. Kelly's home per Google Maps. Plaintiff's counsel has also spoken to staff at the clerk's office of the United States District Court of the District of Arizona in Phoenix (which is 17 minutes from Ms. Kelly's home), and they can facilitate the testimony upon an order or minute entry by this Court. The clerk informed us that they do this all the time.

In the end, the only real burden on Ms. Kelly is that, as relayed by Mr. Nathan at the pretrial conference, this is unpleasant for her. That is not surprising. If Plaintiff's version is to be believed, Ms. Kelly keeps getting asked to recount details that are not truly part of her memory and keeps facing requests by defense counsel to take up her time to help her "study for the test" by reviewing prior testimony. When Ms. Kelly reports she does not want to do this, maybe what she really means is she does not want to have to undergo all this preparation before answering questions. In any event, Ms. Kelly is the most critical witness in the case, and the jury's need to hear from her live is sufficient good cause to call her to testify at this trial.[4]

## II.     Brenda Thomas

---

[4] Given how she is behaving, it is possible defense counsel already promised Ms. Kelly she would not have to testify in obtaining her cooperation for the deposition. If that is the case, defense counsel did not have the authority to make that promise.

Ms. Thomas stands on different ground. As relayed to the Court today, she is willing to testify voluntarily. There is no reason to preclude her from doing so.

Backing up a step, at the final pretrial conference, Mr. Nathan objected upon learning that Plaintiff had served Ms. Thomas, claiming it was too late. Mr. Nathan claimed that he had "filed a motion *in limine* asking for that contact information for Brenda Thomas and making sure we would not be surprised...." Mr. Nathan further stated: "First, I just want to say that we did try to find her. ... And this is a surprise, in our view, outrageous..." Ex. A at 98-99.[5]

The Court ordered Plaintiffs' counsel to provide Ms. Thomas' address to the Defendants by the close of business. After court ended, Plaintiffs' counsel did so.

It turned out that Mr. Nathan's protestations of surprise were overstated. Plaintiff's counsel later learned from Ms. Thomas that investigators for the Defendants came by her home *that very same day* while the parties were still in court around 2:45 p.m. -- *i.e.,* before Plaintiff even had a chance to provide her address. If defense counsel did not already have her address, Defendants were certainly able to find her in a matter of hours, if not minutes. There is no reason they could not have done so sooner, and no legitimate surprise (she was listed on the parties' FPTO since last year).

Absent unfair surprise, there is no good reason not to allow Ms. Thomas' testimony. As the

---

[5] On March 31, Plaintiff's counsel promptly served Defendants' counsel with copies of proof of service of trial subpoenas for four witnesses, with a cover email asking for an agreement that Defendants would also timely serve their trial subpoenas after they were served. *See* Ex. D (Wang email). Based on prior experience, we did not want a situation where we promptly served trial subpoenas only to learn later that the other side was not playing by the same rules. After receiving those four trial subpoenas and the request to agree to reciprocity on service duration, the Defendants did not respond at all. Accordingly, when Plaintiff's counsel served Ms. Thomas a week later, instead of immediately serving Defendants' counsel, we waited for a response about how service was going to be handled. Mr. Nathan's indignation about the service issue was especially misplaced given that he later told the Court (albeit inaccurately) that he served Ms. Kelly without serving Plaintiff's counsel.

gas station attendant who alleged identified Plaintiff as having purchased gasoline, she is another of the critical witnesses in the case who are still alive.

The Court directed the parties to inquire as to Ms. Thomas' intentions. After having been given the opportunity for reflection on the decision, Ms. Thomas expressed willingness earlier today to give video testimony at a deposition near her home in Minneapolis and tell the truth to the best of her memory. That deposition is presently scheduled for April 27, 2023. Both sides will have a full and fair opportunity to question her. The jury should have the benefit of her testimony too.

                              Respectfully submitted,

                              s/ Jon Loevy
                              One of Plaintiff's Counsel

| | |
|---|---|
| Jon Loevy | Elizabeth Wang |
| Roshna Bala Keen | LOEVY & LOEVY |
| Jordan Poole | 2060 Broadway, Suite 460 |
| LOEVY & LOEVY | Boulder, CO 80302 |
| 311 N. Aberdeen Street, Third Floor | (720) 328-5642 |
| Chicago, Illinois 60607 | elizabethw@loevy.com |
| (312) 243-5900 | |
| jon@loevy.com | |
| roshna@loevy.com | |
| poole@loevy.com | |

## CERTIFICATE OF SERVICE

I, Jon Loevy, an attorney, certify that on April 21, 2023, I filed a copy of the Plaintiff's Position Statement via the Court's electronic filing system and thereby served a copy on all counsel of record.

                              s/ Jon Loevy