**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADAM GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-CV-02624 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF CHICAGO, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This Order explains the decisions reflected in Court Set 1 of the revised jury instructions. The page numbers refer to the page numbering on the bottom of the pages of Court Set 1.

**All Litigants Equal Before the Law (page 2).** The is a modified version of Seventh Circuit Pattern 1.03, adapted to this specific case.

**Person No Longer a Defendant (page 3).** This is adapted Pattern 1.26 is appropriate given that Percy Davis was a party at the start of the trial but is no longer a party. Court Set 1 modifies the Pattern Instruction title to a more neutral title than "dismissed" or "withdrawn." Also, the second and third sentences are flipped in comparison to the Pattern Instruction to make the instruction flow better.

**Prior Inconsistent Statements or Acts (page 16).** Court Set 1 makes some modest formatting and style changes to make this instruction clearer than Pattern 1.14. In the first paragraph, first sentence, "statements given by" is edited to "statements made by." In the second paragraph, first sentence, the "With respect to other witnesses" language is expanded on.

**Expert Witnesses (page 17).** Court Set 1 makes a style change to the third sentence of Pattern 1.21, from "such person" to "an opinion witness."

**Certificate of Innocence (page 21).** Court Set 1 offers the instruction (with a one-sentence exception and some style changes) given in *Harris v. City of Chicago*, 2018 WL 2183992, at *5 (N.D. Ill. May 11 2018), which was cited with approval by the Seventh Circuit in *Patrick v. City of Chicago*, 974 F.3d 824, 832–33 (7th Cir. 2020). Court Set 1 removes the line that said, "The State court was not asked nor did it decide the issue of whether Plaintiff's confession was false, fabricated[,] or coerced." This sentence singles out one of the claims (coerced confession) and poses the risk of putting undue attention on it, as if the Court were emphasizing that the Certificate is particularly and weakly relevant as to that claim.

**General Requirement of Personal Involvement (page 23).** Court Set 1 adapts Pattern 7.02 to the specifics of this case, and also adds a paragraph so that the jury understands that the failure-to-intervene and conspiracy claims will elaborate further on the personal-involvement requirement.

**Claim 1—Coerced Confession (pages 25–26) / Proximate Cause (page 27).** The parties offer instructions that differ primarily in two ways. First, on causation: Gray proposes simply asking whether he "was damaged as a result," while the defense proposes proximate causation. Although legal jargon is not favored in jury instructions, Court Set 1 will ask whether the "coerced confession proximately caused damages to the Plaintiff." It is one thing to avoid legal-ese, but quite another to ask the jury whether there was damage "as a result," which is too vague of a question for a coerced-confession claim. And § 1983 is read against the "'background of tort liability,'" *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)), which requires proximate causation, *id.* at 582–83; *Hamilton v. Thezan*, 710 F. Supp. 220, 226 (N.D. Ill. 1989) (in coerced-confession case, holding that "Hamilton has failed on the 'proximate cause' element necessary to impose Section 1983 liability on defendants."). The definition of proximate cause comes from *Whitlock*, 682 F.3d at 582.

The second bone of contention is the definition of voluntariness. "The Due Process Clause of the Fourteenth Amendment forbids the admission of an involuntary confession in evidence in a criminal prosecution." *Dassey v. Dittmann*, 877 F.3d 297, 303 (7th Cir. 2017). "The Supreme Court's many cases applying the voluntariness test have not distilled the doctrine into a comprehensive set of hard rules, though prohibitions on physical coercion are absolute." *Id.* This assessment is done in the context of "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412

U.S. 218, 226 (1973). In assessing voluntariness, "even a general standard may be applied in an unreasonable manner." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Court Set 1 instructs that no single standard or formal combination of factors must be found in assessing voluntariness. The formulation is a neutral way of explaining the definition of voluntariness and was given in *Andersen v. City of Chicago*, No. 16-cv-1963 (N.D. Ill.)
!

**Claim 2—Fabrication of evidence (page 28) / Claim 3—Failure to Disclose Evidence (page 29).** Pattern 7.14 combines two types of claims—*fabrication* of evidence and *concealment* of evidence—in one instruction. But that is a more confusing way to present two different categories of claims. Indeed, the plethora of brackets in the Pattern suggest that they are best split up for clarity's sake. Court Set 1 offers a separated version of Pattern 7.14.

With this split in place, for fabrication of evidence, the definition of "material" is drawn from *United States v. Agurs*, 427 U.S. 97, 103 (1976) (cited by Pattern 7.14, Committee Comment (e)). For concealment of evidence, the definition of "material" is drawn from Pattern 7.14 and the *Brady* line of cases.

**Claim 4—Unduly Suggestive Identification (page 31).** The Defendants first argue that *Holloway v. City of Milwaukee*, 43 F.4th 760, 766 (7th Cir. 2022), questions whether there even is a cognizable § 1983 claim for unduly suggestive identifications, or instead is the due-process right limited to barring those identifications from criminal prosecutions. The question is prompted by *Vega v. Tekoh*, 142 S. Ct. 2095, 2101 (2022), which held that *Miranda* violations lead only to exclusion of confessions in criminal prosecutions, but do not give rise to § 1983 claims for those violations. 43 F.4th at 766 (citing *Vega*). The defense did not move for reconsideration of the summary judgment denial, but no doubt this argument (and the associated qualified-immunity argument) will find its way into the Rule 50 motion. The Court reserves decision on the overall cognizability issue.

With the claim intact for trial (unless Gray withdraws it), Court Set 1 reflects an instruction drawn from the principles set forth in *Holloway*, 43 F.4th at 766, and in *Reyes v. Nurse*, 38 F. 4th 636, 644–45 (7th Cir. 2022). The defense proposal to include the qualified-immunity formulation is rejected, because that is a legal issue for the Court, not the jury. The defense proposal to add an "egregious" element is rejected because that is not required. But the remainder of the defense proposal on the

3

elements, with some style edits, is sound. Gray's proposal to simply ask whether the trial was "unfair" is too vague for a jury to apply. The defense proposal on the factors to consider in evaluating the identification is unnecessary, and the parties instead may argue the circumstances of the identification to the jury.

### Claim 5—Unlawful Detention (page 32).

*Causation.* On the unlawful-detention claim, the first dispute is how to articulate the causation requirement. Gray's proposal omits any causation element as to the commencement or continuation of the criminal proceeding, whereas the Defendants propose language that the Plaintiff "sustained damages because of" the actions of the Defendants, and limits the time period of damages to when proceedings were initiated through the trial (or through when probable cause was established).

The best clue on how to address explain the elements comes from *Manuel v. City of Joliet*, 580 U.S. 357, 365–67 (2017), in which the Supreme Court made explicit (for the first time) that pretrial detainees may bring a Fourth Amendment claim for unreasonable detention even for custody that comes after legal process. The Supreme Court did not detail in every jot and tittle the elements of a Fourth Amendment post-process detention claim (as presented to the Court, there was no need to do so). *Id.* at 921–22. But *Manuel* did describe the post-process detention in this way: "In the somewhat obscure legal lingo of this case, Manuel's subsequent detention was thus pursuant to 'legal process'—because it followed from, and was authorized by, the judge's probable-cause determination." *Id.* at 915. That conception of the detention—that it was authorized by the probable-cause finding—suggests that there is no separate causation requirement explicitly tied to the detention. So long as an officer caused the prosecution, then any detention based on the probable-cause finding (whether on a complaint or on an indictment) is considered to be "authorized" by the finding. Court Set 1 thus limits the causation element in that way.

*Malice and Favorable Termination.* The defense propose two malicious-prosecution-type elements, that is, malice and termination in the Plaintiff's favor. The defense cites only to *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). On the malice element, *Thompson* explicitly disavows deciding whether malice, or any mental state, is needed at all. *Id.* at 1338 n.3. Absent any other citation by the defense, the Court resorts to first principles: generally, no subjective state of mind is applicable to a Fourth Amendment detention claim. (Other than that Fourth

4

Amendment seizures must be accomplished by means intentionally applied by the officer, which is not an issue in this type of detention claim.)

On the termination element, *Thompson* holds that a Fourth Amendment claim for malicious prosecution does require that the plaintiff show that the criminal prosecution "ended without a conviction." 142 S. Ct. at 1341. But that is all—the plaintiff need *not* show some "affirmative indication of innocence." *Id.* So Court Set 1 contains the *Thompson* formulation, which should be undisputed in this case, because the conviction has been vacated.

***Probable Cause.*** Gray proposes to explicitly tell the jury that fabricated evidence does not support probable cause. This is too obvious to point out, and risks the Court's imprimatur on Gray's theory of the case. Gray also proposes to tell the jury that "[t]hreats alone" do not establish probable cause, but this is a point for the parties to argue, not an absolute statement of law for the Court to provide.

***Damages.*** The defense proposes to limit the time period of damages to the time between the prosecution's start and the trial or whenever probable cause is established, whichever is shorter. On the first category (till the trial begins), it is not clear why in a wrongful-conviction case the trial's start would end the claim (and *Thompson*, the only case cited by the defense, does not seem to address an end point for wrongful-conviction cases). The second proposed end point (the establishment of probable cause) is implicit in the elements because the absence of probable cause is no longer the cause of any damages. So, in this case, there is no need for further elaboration on damages in the written instruction, and the defense may argue the point in closings if it wishes.

**Claim 6—Federal Conspiracy (page 34).** The parties disagree on whether to characterize a conspiracy by that label—conspiracy—or to refer to it only as an "agreement," as Gray proposes. Although omitting the term "conspiracy" might seem simpler at first blush, closing arguments almost surely will refer to the conspiracy claim by that name, and the definition is simple enough. So the term "conspiracy" will be used.

The parties also offer competing definitions of a conspiracy, with the defense essentially saying nothing more is needed that "agreement," and the Plaintiff going to much greater lengths to water down how explicit the agreement must be. Court Set 1 reflects a neutral way of explaining the concept that no "formal" agreement is required and that circumstantial evidence may be used to prove an agreement.

**Claim 7—Failure to Intervene (page 36).** The Defendants offer no explanation for their inclusion of "proximately cause" in the fifth element. Although proximate causation is a background-tort principle, it is not clear that it applies in failure-to-intervene claims. By its nature, the failure to intervene means that another person directly caused the harm, so a proximate-cause requirement here is confusing. Instead, Court Set 1 uses Pattern 7.22, which is an accurate and neutral statement of the law.

**Claim 8—Malicious Prosecution (page 37).** The primary dispute is whether to explain that it is sufficient for the Defendants to *cause* the commencement or continuation of a proceeding. That is an accurate statement of the law, and to leave it out would risk watering down the principle that officers can cause the commencement or continuance of a proceeding without being the prosecuting attorneys themselves. Court Set 1 adopts Gray's formulation to avoid that problem.

Also, Court Set 1 refers the jury back to the definitions of probable cause and commencement-and-continue for the Fourth Amendment claim. Those definitions are equally applicable to the malicious prosecution claim. Lastly, Court Set 1 defines malice based on *Bianchi v. McQueen*, 58 N.E.2d 680, 699 (Ill. App. Ct. 2016), and *Aguirre v. City of Chicago*, 887 N.E.2d 656, 663 (Ill. App. Ct. 2008).

**Claim 9—State Conspiracy (page 39).** Court Set 1 adapts the federal-rights conspiracy instruction to the state law claim.

**Intentional Infliction of Emotional Distress**. This proposed instruction, which only pertained to Defendant Brown, is removed because Brown is no longer a party.

**Compensatory Damages (page 40).** Court Set 1 uses Pattern 7.26, with the pertinent categories of damages listed and adding the loss of liberty as a category. (The defense did not propose a compensatory-damages instruction.)

Court Set 1 also adds that the financial condition of any Defendant shall not be considered in determining compensatory damages. With that instruction in place, there is no need to instruct the jury about indemnification of compensatory damages. If liability is found, then the downside risk of an artificially low damages award is readily outweighed by the significant risk that the jury would artificially increase damages if the jury were to learn about indemnification.

At the instructions conference, the Court will ask about the present-value paragraph from Pattern 7.26. It is not clear that there has been any evidence introduced on how to calculate present value.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: May 19, 2023

7